No. 14650

IN THE SUPREME COURT OF THE STATE OF MONTANA

1980

JOHN BALOCK, JR., and HEATHER J. BALOCK,

Plaintiffs and Appellants,

vs.

THE TOWN OF MELSTONE, MONTANA et al.,
MARGARET REIGHARD, ROBERT HAGSTROM, and
MUSSELSHELL COUNTY,

Defendants and Respondents.

Appeal from:   District Court of the Fourteenth Judicial District,
Honorable Nat Allen, Judge presiding.

Counsel of Record:

For Appellants:

K. Robert Foster, Lewistown, Montana

For Respondents:

John L. Pratt, County Attorney, Roundup, Montana

Submitted on briefs: January 16, 1980

Decided: FEB 20 1980

Filed: FEB 20 1980

_Thomas J. Kearney_
Clerk

Mr. Justice John Conway Harrison delivered the Opinion of the Court.

Appellants filed this action in the District Court of the Fourteenth Judicial District in Musselshell County. Appellants requested the District Court to enjoin the respondents from taxing certain property they owned at the rates prevailing for property located in the town of Melstone and to refund Melstone city taxes on the property paid under protest. The Honorable Nat Allen heard the case sitting without a jury. Judge Allen concluded that appellants' property was within the boundaries of the City of Melstone and denied the relief prayed for by appellants. This appeal followed.

The town of Melstone incorporated in 1913. The area included in the original plat of the town is shown on the map, attached to this opinion for clarification. The area originally incorporated as the town of Melstone is enclosed by the dotted line on the map.

Over the years, the tax assessor apparently only taxed the sections of Melstone included in the area marked off into lots and blocks as inside the City of Melstone. Prior to 1976, the map used by the County Assessor to determine if a piece of property was in the City of Melstone for tax purposes included only the area marked off in lots and blocks. The area is marked by the double solid line on the attached map.

In 1973 appellants John and Heather Balock purchased a piece of property inside the city limits of Melstone as included in the original plat of the town but outside the area traditionally considered inside Melsone by the County Assessor for tax purposes. The approximate location of the property is marked by x's on the attached map. Before

-2-

purchasing the property, Mr. Balock went to the County Assessor's Office to see if the property was taxed as being within the City of Melstone. The Musselshell County Assessor told Mr. Balock that the property was outside the city limits of Melstone. The County Assessor also showed Mr. Balock the map of Melstone then being used to determine if property was within the city limits. That map only included the part of Melstone that had been marked off into streets and blocks. The map did not include the property Mr. Balock was about to purchase.

In 1976, the town of Melstone realized that a portion of the area included in the original plat of the city was not being taxed as a part of the city. The County Commissioners decided to rectify the situation. The 1976 tax assessment notices raised the rates of the area inside the original town plat but not previously taxed at city rates to the city rates. This included the property purchased by the Balocks in 1973. Including the property in the city for tax purposes caused the taxes on the property to go from $700 to $800 per year to approximately $1,500 per year. The Balocks paid their increased taxes under protest and filed an appeal with the State Tax Appeals Board. The Appeals Board dismissed the case for lack of jurisdiction. The Balocks then initiated this suit in District Court.

Appellants raise the following issues on appeal:

Did the District Court err in concluding the Balocks' property was within the town of Melstone for tax purposes?

Did the District Court err in failing to find that the required procedures for reassessment were not followed by the town of Melstone?

The doctrine of acquiescence is a long established tenant of common law. See 2 McQuillin, Municipal Corporations § 7.09, pp. 294-297 (3rd rev. ed. 1979). The basic premise of the doctrine is that long acquiescence between parties as to municipal boundaries eventually establishes those boundaries. 2 McQuillin, supra at 294. The rationale for the doctrine has been cited by various courts as estoppel and laches. La Porto v. Village of Philmont (1976), 39 N.Y.2d 7, 346 N.E.2d 503, 505; Scotch Plains Township v. Town of Westfield (1964), 83 N.J. Super. 323, 199 A.2d 673, 676. The United States Supreme Court uses the acquiescence doctrine in settling boundary disputes between states. Ohio v. Kentucky (1973), 410 U.S. 641, 651, 93 S.Ct. 1178, 1184, 35 L.Ed.2d 560, 568; Michigan v. Wisconsin (1926), 270 U.S. 295, 308, 46 S.Ct. 290, 294, 70 L.Ed. 595, 601. Other courts have applied the doctrine to settle boundary disputes between adjoining cities, City of Whiting v. City of East Chicago (1977), 266 Ind. 12, 359 N.E.2d 536, and to determine if disputed areas should be included in or excluded from municipal corporations. La Porto, supra, 346 N.E.2d 503.

Perhaps because of the paucity of authority on the doctrine, no case setting out the elements of acquiescense could be found. Factors considered by various courts in determining the applicability of the doctrine include: whether or not property in the disputed area was taxed by the city, Griffin v. Town of Pine Bluffs (Wyo. 1962), 368 P.2d 132; Leary v. Mayor and Aldermen of Jersey City (3rd Cir. 1913), 208 F. 854, 856; the exercise of personal and civil rights such as voting by residents of the disputed area, La Porto, supra, 346 N.E.2d at 505; State ex rel. City of Minot v. Willis (1908), 18 N.D. 76, 118 N.W. 820, 822;

-4-

the records on file pertaining to the boundaries of the municipality, Griffin v. Town of Pine Bluffs (Wyo. 1961), 366 P.2d 993; Town of Stephens City v. Zea (1963), 204 Va. 82, 129 S.E.2d 14; provision of municipal services to the disputed territory, City of Whiting supra, 359 N.E.2d at 539; and the exercise of police and regulatory powers over the property, City of Whiting, supra.

The presence or absence of any one of these factors does not necessarily require or preclude the application of the doctrine. Courts consider the totality of the circumstances in determining if the doctrine should apply. City of Whiting, 359 N.E.2d at 539.

The threshold question we face is whether or not to adopt the acquiescence doctrine in Montana. We recently recognized the doctrine in Gregory v. City of Forsyth, No. 14584, decided February, 1980. The common law is the law in Montana where it does not conflict with Montana statutes. Section 1-1-108, MCA. On the basis of Gregory and section 1-1-108, MCA, we should adopt the acquiescence doctrine insofar as it does not conflict with Montana statutes.

The next logical step in analyzing the problem here would be to consider the elements of the acquiescence doctrine in light of the facts involved in this case. However, one important caveat to section 1-1-108, MCA makes this step unnecessary. The section states in part: "In this state there is no common law in any case where the law is declared by statute." This language has been interpreted in the context of the inclusion of property within a city on a prior occasion in Pool v. Town of Townsend (1920), 58 Mont. 297, 191 P. 385. In Pool, the plaintiff sought an injunction restraining the town of Townsend from enforcing the payment

of a special improvement tax levied on property he owned. At the time the City sought to impose the tax, the property had not been properly annexed into the city. The City argued that, even though the proper procedure had not been followed in annexing the disputed property, a common law dedication and acceptance of the streets and alleys in the area including the property brought the property within the town limits. The Court rejected the City's argument. In so doing, the Court cited language from a since repealed statute identical to the above-quoted language in section 1-1-108. Based on the directive of the statute not to apply the common law where superceded by statute, the Court reasoned that:

> "If, then, the Codes provide the means by which an addition becomes a part of a city or town and subject to its jurisdiction, the means so provided must be held to be exclusive." Pool, supra, 58 Mont. at 304. (Emphasis added.)

The Court went on to hold that since annexation procedures were provided for in the Code, the property could not be included in the Town of Townsend unless those procedures were followed. Gregory, supra, affirms Pool's conclusion and rationale.

Gregory and Pool reject a common law method of including property in a municipality and establish annexation as the exclusive means of bringing property into a town or city. The negative inference logically drawn from that rule is that Montana's de-annexation statutes, i.e. sections 7-2-4801 to 7-2-4810, MCA, provide the exclusive means for excluding property from municipalities. Under this analysis, the common law doctrine of acquiescence cannot be applied in this case to supercede the annexation statutes and the disputed property should be considered a part of the town of

-6-

Melstone.

We reach this same conclusion by applying the acquies-
cence doctrine. In _Gregory_ we said, ". . .'The _rule as to_
_establishment of municipal boundaries by acquiescence does_
_not apply_ where the period of acquiescence is short or _where_
_the boundary involved is clearly otherwise than claimed_.'
2 McQuillin, supra, § 7.09 at 308 (emphasis added)." _Gregory_
_Opinion_ at p. 8. Here, as in _Gregory_, the boundaries in
dispute are clear. None of the parties dispute the fact
that in 1913 the Town of Melstone incorporated and included
within its boundaries the property now owned by the Balocks.
No one contends the property has been de-annexed from Melstone
since that time. The dispute here centers around the effect
on the Balock property of the mistaken belief that the
property was outside the town. That belief has no effect on
the property's status, even applying the doctrine of acquiescence
where the boundaries are clear. We therefore affirm the
judgment of the District Court on this issue.

Moving to a consideration of the second issue, various
statutes applicable to this situation and in effect at the
time appellants initiated this suit required notice to
taxpayers by officials before changing property tax assess-
ments. Section 84-602, R.C.M. 1947, which was repealed in
1977, required written notice to a taxpayer by the County
Board of Equalization of its intention to increase or lower
his assessment so as to equalize the assessment of the
property to conform with its true value. The County Board
of Equalization was also required to notify interested
persons before directing the County Assessor to tax property
that had escaped assessment under pre-1977 law. Section 84-
609, R.C.M. 1947. The State Board of Equalization was

subject to similar notice requirements. Section 84-710, R.C.M. 1947, repealed in 1977, required notice before any change in assessment. Section 84-711, R.C.M. 1947, which was amended in 1977, required the State Board to give notice before reassessing property previously assessed incorrectly.

These statutes clearly indicate appellants should have been notified before the County reassessed their property. The Court must therefore reverse this case unless the Court finds appellants waived their right to notice. Here it can be argued that appellants waived such right by appearing before the State Tax Appeals Board to contest their property reassessment.

If the statute authorizing a change in property assessment requires notice before the Equalization Board can change an assessment, the notice is a prerequisite to the jurisdiction of the Equalization Board to change the assessment of the property. Montana Ore Purchasing Co. v. Maher (1905), 32 Mont. 480, 487, 81 P. 13, 14-15; Western Ranches, Ltd. v. Custer County (1903), 28 Mont. 278, 281, 72 P. 659, 660. An appearance by a party to challenge a change without notice does not constitute waiver of the notice requirement. Western Ranches, Ltd., supra, 28 Mont. at 282. If, however, the applicable statute requires notice after the property has been reassessed, notice is not considered jurisdictional. An appearance by a taxpayer under this type of statute does constitute a waiver of the notice requirement if the taxpayer has a chance to present the merits of his case. Anaconda Copper Mining Co. v. Ravalli County (1919), 56 Mont. 530, 532-535, 186 P. 332, 333-334.

Here the applicable statutes required notice before reassessment. The notice is jurisdictional under the above

cases. The appearance by appellants to contest the reassessment does not constitute waiver of the jurisdictional notice requirement. The reassessment should therefore be considered void as entered without jurisdiction and the District Court reversed on this issue.

As a practical matter, finding the improper procedure was followed by the respondents does not prohibit the collection of the disputed taxes. Section 15-8-601, MCA allows the Department of Revenue to reassess property erroneously assessed within the preceding ten years. The section sets up procedural guidelines for correcting past improper assessments. The respondents here can follow the statutory procedures and collect the taxes on appellants' property for the years in question.

To summarize, Montana's annexation and de-annexation statutes provide the method for including or excluding property into or from cities and towns. That procedure is exclusive under Gregory and Pool, supra. Appellants should not, therefore, be permitted to de-annex their property from Melstone under any other procedure. Neither does the doctrine of acquiescence allow the exclusion of the property since the boundaries of Melstone are clear. Gregory, supra. The District Court should be affirmed on this issue.

Appellants did not receive proper notice of the reassessment of their property. The lack of notice is a jurisdictional defect rendering the reassessment void. Appellants' appearance in this matter did not represent a waiver of the notice requirement. See Montana Ore Purchasing Co. and Western Ranches, Ltd., supra. This defect warrants reversal.

The judgment of the District Court is reversed.

_____
John Conway Harrison
Justice

We concur:

_____
Chief Justice

_____

_____

_____
Justices

-10-

1809+22.9 FAP 328 F

FAP 14

25 30
36 31
T 10N R 30E
T 10N R 31 E

0+00.0 BEG FAP 328 I
1830+34.5 END FAP 328 F

TETON

ST

CHICAGO

CASCADE

RAILWAY

FIRST

SECOND

THIRD

FOURTH

FIFTH

MILWAUKEE

FERGUS

ST

SECOND

ST W

ST

AVE

AVE

AVE

AVE

ST W

PAUL

FIRST

AVE

MAIN

ST

8

PACIFIC

FIRST

ST E

SECOND ST E

THIRD

12

30 29
31 32

55+66.7 FAP 328 I

FAP 14