No. 81-417

IN THE SUPREME COURT OF THE STATE OF MONTANA

1982

---

EVANS PRODUCTS COMPANY, a Delaware Corporation,

Plaintiff and Respondent,

vs.

MISSOULA COUNTY, a municipal corporation of
the State of Montana; FERN HART, as Clerk
and Recorder & Treasurer, et al.,

Defendants and Appellants.

---

Appeal from: District Court of the Fourth Judicial District,
In and for the County of Missoula
Honorable John Henson Judge presiding.

Counsel of Record:

For Appellants:

Robert L. Deschamps,III, County Attorney, Missoula, Montana
R. Bruce McGinnis, Dept. of Revenue, Helena, Montana

For Respondent:

Mulroney, Delaney & Dalby, Missoula, Montana

---

Submitted on briefs: September 13, 1982

Decided: December 3, 1982

Filed: DEC - 3 1982

Thomas J. Kearney
Clerk

Mr. Justice Gene B. Daly delivered the Opinion of the Court.

Missoula County and the State Department of Revenue appeal from a summary judgment issued by the District Court of the Fourth Judicial District, Missoula County, in which the plaintiff, Evans Products Company, was refunded real property taxes it had paid under protest.

Evans Products Company (Evans) operated a plywood and wood products mill in Missoula County during the tax years 1977, 1978, and 1979.

In 1978 and 1979, Evans received a tax assessment list, stating that the market value for Evans' buildings was $396,050, and the taxable value was $33,862. Evans paid both the 1978 and 1979 taxes on its buildings based on these figures.

Missoula County discovered that it had miscalculated the market value assigned to Evans' buildings for the years 1978 and 1979. On December 27, 1979, the Missoula County Assessor's Office sent Evans the following notice and explanation of the error:

> "This is to inform you that in 1978 there was an incorrect assessment of the Evans Products Co. improvements on N.P. land here in Missoula. Prior to 1978 the improvement values shown on assessment notices were assessed values and were 40% of full or appraised value. Then 30% of the assessed value was used to arrive at a taxable value which equalled 12% of full value. In 1978, as a result of the state-wide reappraisal of real property this method was changed so that the figure shown on the assessment notice would be full market value and then 8.55% would be applied to arrive at a taxable value. Because your plant had not been reappraised at the time the 1978 assessments went out, the 1977 assessed value of the improvements was inadvertently carried forward as full market value. This figure was $396,050 when it should have been $990,125 as shown on the 1979 assessment. This resulted in an underassessment of $594,075 with a taxable value of $50,794.

> "1978 method used in error:
> $396,050 (assessed value) x 8.55% = $33,862 taxable value

> "Should have been:
> $990,125 (full value) x 8.55% = $84,656 taxable value

- 2 -

"A corrected 1978 assessment notice is enclosed with this letter and a supplemental tax bill will be sent to you for the balance in the amount of $11,507.89."

A new 1979 assessment notice was also sent Evans with the same corrections.

Missoula County admittedly made the error in assigning the proper market value to Evans' building. The error was made in 1978, when all the real property and improvements in the county were being reappraised, and at the same time the county was making a change-over to a new data processing system.

Prior to 1978, the Missoula County Assessor had only received assessed values (40 percent of market value) of property from the county appraisers and with these figures computed the taxable value. In 1978, all of these assessed values were keypunched into the new data processing system; values that were to be immediately replaced by the market value when a reappraisal was done. For those properties missed by the reappraisal, the assessed value had to be multiplied by 2.5 in order to carry forward the market value.

Evans' property was never reappraised. Evans' old assessed value was erroneously carried forward as the full market value. Someone in the Assessor's Office, whoever keypunched in the information, had failed to multiply the assessed value by 2.5 in order to carry forward the true market value, resulting in a significant tax decrease for Evans.

When Evans received the notices to pay increased taxes for the year 1978 and 1979, it paid them under protest. In 1980, Evans filed a complaint seeking refund of the taxes paid under protest. Both parties moved for summary judgment, which was granted to Evans.

On appeal, Missoula County and the Department of Revenue (DOR) admit that the taxes should be refunded at this time because the county initially failed to follow the procedures set down in section 15-8-601, MCA. Section 15-8-601 provides that whenever the DOR discovers that any taxable property has been "erroneously

- 3 -

assessed" it may reassess the property. DOR is given ten years to reassess the property. Subsections (2) and (3) of section 15-8-601, MCA, then provide that when the DOR proposes to increase the prior valuation, it must give notice of the proposed change, with the opportunity for a conference and appeal to the state tax appeal board.

Here, Evans was not given the proper notice nor the opportunity for a conference and an appeal to the state tax appeal board.

Because DOR admits that the taxes should have been refunded we must affirm that part of the District Court's summary judgment. However, we reverse that part of the judgment which would preclude DOR from proceeding anew under section 15-8-601, MCA.

Evans claims that the DOR is precluded from now proceeding under section 15-8-601, MCA, because initially the proper procedures were not followed. We resolved this issue in dicta of the recent case Balock v. Town of Melstone (1980), ___ Mont. ___, 607 P.2d 545, 37 St.Rep. 288. While Balock directly involved taxation as a result of annexation, we noted that a finding of improper procedure does not prohibit the collection of disputed taxes under section 15-8-601, MCA:

> "As a practical matter, finding the improper procedure was followed by the respondents does not prohibit the collection of the disputed taxes. Section 15-8-601, MCA, allows the Department of Revenue to reassess property erroneously assessed within the preceding ten years. The section sets up procedural guidelines for correcting past improper assessments. The respondents here can follow the statutory procedures and collect the taxes on appellants' property for the years in question." 607 P.2d at 549

DOR may therefore proceed properly under section 15-8-601, MCA, assuming 15-8-601, MCA, applies to the type of error involved here.

Section 15-8-601(1), MCA, provides:

> "Whenever the department of revenue discovers that any taxable property of any person has in any year escaped assessment, been erroneously

- 4 -

> assessed, or been omitted from taxation, the
> department may assess the same providing the
> property is under the ownership or control of
> the same person who owned or controlled it at
> the time it escaped assessment, was erro-
> neously assessed, or was omitted from taxa-
> tion."

Here, Evans claims that DOR may not proceed under section 15-8-601, MCA, because the error is not an "erroneous assessment" but rather an "erroneous appraisal." This technical distinction drawn by Evans is not correct.

The record simply does not support the statements made by Evans in its brief that the error here occurred in the Missoula County Appraiser's Office and not in the Assessor's Office. Neither does the record support the statement made by Evans that this is solely an "appraisal" error. The error here arose because a keypuncher in the County Assessor's Office failed to multiply the assessed value by 2.5. An incorrect market value was therefore carried forward.

This error was merely a clerical one. It was not an error, as characterized by Evans, of undervaluation during the process of reappraisal. Such a clerical error falls under the plain language meaning of "erroneous assessment" as it is used in section 15-8-601, MCA.

Evans argues that this case is similar to those cases where a county assessor has, through an error in judgment, undervalued property. The error here was not one of judgment, but, as noted above, only a miscalculation. The Florida Supreme Court has expressed well the difference between valuation resulting from an error in judgment and one resulting from a clerical error:

> "We must keep in mind the distinction between
> changes and 'miscalculations' by the assessor
> which 'up' the amount previously assessed
> after tax roll certification, and the
> situation here where there has been no billing
> at all on the improvement (or it could be a
> separate, 'overlooked' parcel of land) which
> has been completely excluded from the tax
> roll. This is obviously a mistake, error,
> oversight, which cannot be prejudicial to the
> taxpayer as in those cases where a change in
> judgment by the tax assessor was involved,
> belatedly increasing the valuation which had
> in fact earlier been assigned, and entered on
> the tax roll. . ."

Korash v. Mills (1972), _____ Fla. _____ , 263 So.2d 579, 581.

Even if the clerical error can be termed solely an "appraisal" error, Evans' argument fails. The bulk of authority and prior Montana case law suggest that appraisal, the setting of market value, is an integral part of the taxation process. Am. Jur.2d State and Local Taxation, Section 704; and Larson v. State (1975), 166 Mont. 449, 534 P.2d 854. In Larson, we stated that the suggested distinction between the statutory use of the word "tax" and the operative fact of an "appraisal" was without substance because the appraisal would have been used as the basis for the tax computation. 534 P.2d at 858. Likewise, here, the mistakenly used assessed value was the basis for the computation of the taxable value.

Whether the error is termed an "assessment" error, or an "appraisal" error, because it was a clerical error made while assessing the taxable value on Evans' property, it was an "erroneous assessment" within the meaning of section 15-8-601, MCA.

We therefore affirm the summary judgment to the extent that the taxes must now be refunded to Evans because the mandatory procedures of section 15-8-601, MCA, were not initially followed. We reverse the District Court's decision to the extent that it would preclude DOR from now proceeding properly under section 15-8-601, MCA.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____

- 6 -

John C. Sheehan

Justices

- 7 -