No. 83-392

IN THE SUPREME COURT OF THE STATE OF MONTANA

1984

---

EAGLE COMMUNICATIONS, INC.,

　　　　　Plaintiff and Appellant,

-vs-

TREASURER OF FLATHEAD COUNTY, MONTANA,
AND THE DEPARTMENT OF REVENUE OF THE
STATE OF MONTANA,

　　　　　Defendant and Respondent.

---

APPEAL FROM:　The District Court of the Eleventh Judicial District,
　　　　　　　In and for the County of Flathead,
　　　　　　　The Honorable James M. Salansky, Judge presiding.

COUNSEL OF RECORD:

　　　For Appellant:

　　　　　　E. Eugene Atherton argued, Kalispell, Montana
　　　　　　Diane B. Walsh, Kalsipell, Montana

　　　For Respondent:

　　　　　　Ted O. Lympus, County Attorney, Kalispell, Montana
　　　　　　Jonathan B. Smith argued, Deputy County Atty., Kalispell
　　　　　　Larry G. Schuster argued, Dept. of Revenue, Helena,
　　　　　　Montana

---

　　　　　　Submitted:　April 19, 1984

　　　　　　　Decided:　July 10, 1984

Filed: JUL 10 1984

*Ethel M. Harrison*
　　　　　　　　Clerk

Mr. Justice Fred J. Weber delivered the Opinion of the Court.

Eagle Communications, Inc. (Eagle) appeals from the order of the Eleventh Judicial District Court, Flathead County, denying Eagle's motion for an order compelling the Flathead County Treasurer (Treasurer) to join in a settlement agreement and dismissing Eagle's action for recovery of 1980 taxes. We affirm.

The issues are:

1. Whether section 15-1-402, MCA, before amendment in 1981, required initiation of a separate lawsuit for each tax year in which the taxpayer alleged the tax unlawful, regardless of whether a lawsuit challenging the previous year's tax was pending at the time the next year's tax was paid under protest?

2. Does the Department of Revenue (Department) have a duty under section 15-8-601, MCA to provide a refund of taxes paid on an erroneous assessment?

3. Must the County Treasurer be compelled to sign and comply with the terms of a settlement agreement reached by the taxpayer and Department, even though the Treasurer contends the taxpayer has no right to a refund because the taxpayer failed to comply with statutory refund requirements?

In November 1978, Eagle purchased the assets and business of station KCFW in Kalispell, Montana. As a result of the purchase, Eagle became subject to ad valorum taxation on the station's real and personal property. In early 1979, as required by statute, Eagle filed with the Flathead County Assessor a reporting statement covering the station's assets. The property was assessed and taxed for tax year 1979 and Eagle received the tax bill in October 1979.

On December 14, 1979, Eagle paid the first installment of 1979 taxes under protest. Eagle then filed this lawsuit

2

on January 21, 1980, within 90 days of the payment under protest, as required by statute. Eagle's complaint alleged that the 1979 tax was based upon an erroneous assessment of the property and was excessive in the amount of $24,293.62. Eagle requested relief in that amount, plus:

> ". . . such further relief as may be proper . . . including but not limited to the relief herein demanded with reference to any further payments that may hereafter be made under written protest."

During the pendency of this lawsuit, Eagle made the following payments under protest to the Treasurer:

| May 13, 1980 | Second Installment of 1979 Taxes |
| November 26, 1980 | First Installment of 1980 Taxes |
| May 27, 1981 | Second Installment of 1980 Taxes |
| November 25, 1981 | First Installment of 1981 Taxes |
| May 26, 1982 | Second Installment of 1981 Taxes |

These installments were paid under protest because the assessment error allegedly affected not only the 1979 tax year, but also the 1980 and 1981 tax years.

Because Eagle filed an action regarding 1979 taxes within 90 days of its first installment paid under protest, the Treasurer retained the corresponding funds in the protest account as required by statute and those funds were available for refund. However, when Eagle did not commence an action within 90 days of the first installment paid on 1980 taxes, the Treasurer disbursed the protested payment funds to the appropriate taxing agencies, as required by section 15-1-402, MCA. The Treasurer contends it is without funds to refund the protested 1980 tax payment.

In 1981, the Legislature amended section 15-1-402, MCA, in effect removing the provision requiring initiation of a lawsuit within 90 days after payment under protest. Pursuant

3

to the amended statute which took effect in 1981, the Treasurer retained in the protest fund the 1981 tax payments made under protest and those funds were available for refund.

During settlement negotiations, the Department recognized that an error had been made in assessing the property which resulted in levying an excessive tax on Eagle for tax years 1979, 1980 and 1981. Eagle and the Department accordingly reached a settlement agreement based upon correct assessment values. The agreement provided for refunds to Eagle for each of the 3 tax years. After signature by representatives of Eagle and the Department, the agreement was presented to the Treasurer for signature. However, because the 1979 refund agreed to by the Department exceeded the amount paid under protest for that year and because Eagle had failed to file a separate action for recovery of 1980 taxes, the Treasurer refused to execute the agreement.

Eagle then filed a motion for an order approving the settlement agreement and a hearing was held. After the hearing, all parties stipulated to refunds for tax years 1979 and 1981, with statutory interest. That stipulation was approved by the District Court. The refunds for 1979 and 1981 are not at issue in this appeal. However, the 1980 tax refund, which was not affected by the stipulation, is the subject of this appeal.

The District Court denied Eagle's motion with respect to the 1980 tax year and dismissed the action. In dismissing the action, the court reasoned:

> "Real Estate taxes are levied each year based on the market value of property in existence as of January 1. The Court feels that the language and rationale of 15-1-402, MCA and other pertinent statutes requires suit for recovery of such taxes to be filed for each year that the tax is challenged and recovery is demanded. This is a two-step process; First, payment under protest of specific amounts; Secondly, suit for recovery

4

within a specified time. Both steps are required. Both steps are necessary to unequivocally declare to the County Treasurer that the taxpayer is challenging the tax and applying to the Court for recovery of same. The County Treasurer needs a clear indication of the taxpayer's intentions because that office is charged with either holding the money or distributing it. Once it's distributed, it's gone. And this Court feels that the law does not intend that the tax collections sit in a protest fund for some open-ended period of time under some assumption that because the taxpayer filed suit at one time and paid subsequent taxes under protest, that he is serious about pursuing recovery of all of them and that the same legal theory that he adopted for the first legal action applies to all subsequent tax payments. The law implies that there be no doubt about the taxpayer's intentions and the Treasurer's obligations. Until both steps are accomplished, there is ambiguity, unbusinesslike fiscal procedures and irresponsible government."

Eagle appeals from denial of its motion for an order approving the settlement and from dismissal of the action.

I

Eagle argues that commencement of this action within 90 days of the first 1979 installment was sufficient to satisfy statutory prerequisites for a refund of 1980 taxes paid under protest during the pendency of this action. It argues that section 15-1-402, MCA, as it existed prior to amendment in 1981, did not expressly require commencement of a separate lawsuit for each tax year. Eagle contends that its complaint prayed for relief from all further payments made under protest, which was sufficient to put the Treasurer on notice that Eagle was actively seeking a refund of 1980 taxes and that the Treasurer had a duty to hold the protested 1980 taxes in the protest fund pending resolution of Eagle's lawsuit. We reject these arguments.

Section 15-1-402, MCA, prior to amendment in 1981, provided:

"(1) In all cases of levy of taxes . . . which are deemed unlawful by the party whose property is thus taxed . . . such party may . . . pay under written protest such portions of such tax or license deemed

5

unlawful . . .. Thereupon the party so paying . . . may bring an action in any court of competent jurisdiction against the officers to whom said license or tax was paid . . .. Both the officers to whom the license fee or tax was paid or the county or municipality in whose behalf the same was collected and the department of revenue must be served with summons and complaint . . .. Any action instituted to recover any such portions of license or tax paid under protest shall be commenced and summons served within 90 days after the date of payment of the same. When any such license or tax is payable in installments, the first installment portion of such tax or license as may be deemed unlawful may be paid under written protest and suit commenced and summons served to recover the same within the time herein prescribed, and if any subsequent installment of such license or tax shall become due or payable before the final determination of the suit commenced to recover the first installment portion paid under protest, then such subsequent installment portion deemed unlawful may also be paid under written protest and no suit or action need be commenced to recover the same, but the determination of the suit or action commenced to recover the first installment portion paid under protest shall determine the right of the party paying such subsequent installment to have the same or any part thereof refunded to him . . ..

"(2) If no action is commenced within the time herein specified or if such action be commenced and finally determined in favor of the county or municipality or treasurer thereof, the amount of such protested portions of the license or tax shall be taken from such protest fund and deposited to the credit of the fund or funds to which the same property belongs, but if such action is finally determined adversely to such county or municipality or the treasurer thereof, then the treasurer shall, upon receiving a certified copy of the final judgment in said action, refund to the person in whose favor such judgment is rendered the amount of such protested portions of the license or tax, with costs of suit and interest . . .. If such action was commenced for the purpose of recovering the first installment portions of any such license or tax and any subsequent installment thereof has been paid under protest as herein provided, then the county treasurer shall, at the time of refunding the amount of such first installment required by such judgment, also refund such portion of any subsequent installment as the person holding such judgment is entitled to recover, together with interest thereon. . .."

Reading the language of this section as a whole, we conclude that it requires commencement of a separate lawsuit for each tax year.

This section sets forth two steps which must be followed by a taxpayer seeking a refund of taxes alleged to be unlawful. First, the taxpayer must timely pay the tax under written protest, specifying the grounds of protest. Second, the taxpayer must bring an action in a court of competent jurisdiction and serve the summons and complaint within 90 days after payment of the tax. The statute provides a limited exception to the lawsuit requirement. This exception allows a taxpayer to pay a subsequent installment of the same tax under protest and have determined in the action already filed his right to recovery of either or both installments.

In addition to stating the requirements a taxpayer must meet to obtain a refund, section 15-1-402 establishes the procedures which must be followed by the Treasurer. The statute requires the Treasurer to deposit all license and tax funds paid under protest into a protest fund. If no action is commenced within 90 days of payment of the first installment under protest or if an action is commenced and finally determined in favor of the taxing entity, then the Treasurer is directed to disburse the protest funds to the appropriate entity. If the taxpayer prevails in the lawsuit, the Treasurer is directed to refund the appropriate amount of the first or subsequent installment, plus costs of suit and interest.

The requirements for the taxpayer and the Treasurer are related. The requirement that the taxpayer commence a separate action for each tax year serves a significant function in the overall tax refund procedure. The Treasurer's duty depends upon whether the protesting taxpayer files suit within the specified time period. If the taxpayer files suit, the Treasurer is put on notice that the taxpayer is actively seeking a refund. The funds are then retained in

7

the protest fund and are available for refund should the taxpayer prevail in his suit. However, if no suit is filed within the specified time period, the Treasurer is required to disburse the protest funds. Because not all taxpayers who pay taxes under protest actually pursue a refund by filing a lawsuit, this provision of the statute insures that protested taxes will not remain indefinitely in question while the taxpayer does nothing to resolve the controversy.

Eagle argues that the exception to the lawsuit requirement for a "subsequent installment" includes protested payments in subsequent years. It contends that here, three years were affected by the same erroneous assessment, making its claim for all three years dependent on a single action. It argues the exception in the statute indicates an intent on the part of the Legislature that multi-year tax disputes be resolved in a single action.

The wording of the exception does not support Eagle's argument. The exception is narrowly phrased to extend only to any subsequent installment of "such license or tax." Reading this language in light of related statutory provisions, the use of the singular rather than the plural of "tax or license" is significant.

As the Treasurer and the Department note, each tax year is singular and self-contained. Each year the taxpayer inventories and reports his assets, the Department assesses the property and sends the taxpayer notice of the property value. A tax bill is then sent to the taxpayer. A separate tax is imposed for each year. Further, each year's tax is paid in two installments. Thus, the exception for a "subsequent installment" was intended only to allow challenge of one year's tax in a single lawsuit.

Eagle further argues that the purpose of the separate lawsuit requirement is notice to the Treasurer, and that its lawsuit, the language of its complaint and its subsequent payment of taxes under protest were sufficient to put the Treasurer on notice that Eagle sought a refund of 1980 taxes and that the funds should have been retained in the protest fund. Thus, Eagle argues its actions were sufficient to comply with the statute and it is entitled to a refund.

Section 15-1-402, MCA (1979) specifically requires filing of an action within 90 days of payment under protest. The Treasurer is expressly directed to disburse the protest funds if no suit is filed within that time period. The statute makes no exception to the disbursement requirement where facts exist constituting notice of challenge to the Treasurer. The filing or lack of filing of a lawsuit is a clearly discernible triggering event which allows for some degree of certainty and finality in the budgeting process.

We hold that section 15-1-402, MCA before amendment in 1981, required initiation of a separate lawsuit for each tax year in which the taxpayer alleged the tax was unlawful. This is so regardless of whether a lawsuit challenging the previous year's tax was pending at the time the next year's tax was paid under protest.

Where a right of action and the conditions for bringing the action are contained within the same statute, compliance with those conditions is a condition precedent which must be fulfilled to preserve the right. Van Tighem v. Linnane (1960), 136 Mont. 547, 550-51, 349 P.2d 569, 571. In Van Tighem, this Court held that timely filing of a complaint and service of summons were conditions precedent to recovery under the tax refund statute. 136 Mont. at 551, 349 P.2d at

9

571. Further, in an earlier case brought under the Montana tax refund statute, this Court stated:

> "The rule is well settled in this country that whenever a statute grants a right which did not exist at common law, and prescribes the time within which the right must be exercised, the limitation thus imposed does not affect the remedy merely, but is of the essence of the right itself, and one who seeks to enforce such right must show affirmatively that he has brought his action within the time fixed by the statute; and if he fails in this regard, he fails to disclose any right to relief under the statute." Dolenty v. Broadwater County (1912), 45 Mont. 261, 267, 122 P. 919, 922.

Here, Eagle failed to file a separate action for recovery of 1980 taxes paid under protest as required by section 15-1-402, MCA (1979). Having failed to comply with the conditions contained in the refund statute, Eagle is not entitled under the statute to a refund of 1980 taxes.

II

Eagle argues that section 15-8-601, MCA requires the Department to correct erroneous assessments and provide for refunds. That section provides in pertinent part:

> "(1) Whenever the department of revenue discovers that any taxable property of any person has in any year escaped assessment, been erroneously assessed, or been omitted from taxation, the department may assess the same provided the property is under the ownership or control of the same person who owned or controlled it at the time it escaped assessment, was erroneously assessed, or was omitted from taxation. All such revised assessments must be made within 10 years after the end of the calendar year in which the original assessment was or should have been made."

Eagle argues that because this section allows the Department to increase an assessment and collect additional taxes, it must also allow the Department to decrease an assessment and refund taxes.

Section 15-8-601, MCA creates no power in the Department to refund taxes unlawfully collected. Eagle argues that in Balock v. Town of Melstone (Mont. 1980), 607 P.2d 545, 37 St.Rep. 288 and Evans Products Co. v. Missoula County (Mont.

10

1982), 654 P.2d 523, 39 St.Rep. 2149, this Court held that where an assessment was increased, the taxing authorities could proceed to collect the additional taxes. Thus, Eagle argues, because this statute requires the Department to correct overassessments, it must also require the Department to provide a refund in such cases.

However, these cases, which Eagle argues allowed collection by the Department, did not discuss the source of authority for the collection, as opposed to the assessment, process. These cases held that failure to give notice as required by section 15-8-601(3), MCA rendered the reassessments void, but that the process could be redone in a procedurally correct manner. Balock, 607 P.2d at 549, 37 St.Rep. at 292-93; Evans Products, 654 P.2d at 525, 39 St.Rep. at 2151-52. The Court did not discuss how or by what authority the taxes would be collected once the reassessment was redone. Moreover, the issue of the Department's refund powers was not addressed and these cases are therefore not authority in support of Eagle's argument.

The Department correctly argues that other remedies are expressly provided for the taxpayer. Specifically, the procedure set forth in section 15-1-402, MCA and discussed above in part I of this opinion provides the taxpayer a means of redress. The requirements of and limitations on that procedure would become meaningless if Eagle were granted the unlimited remedy it seeks under section 15-8-601, MCA. Under Eagle's proposed remedy, there would be a ten year, rather than a 90 day, time limit on taxpayer challenges. Such a rule would threaten predictability of revenues and related government interests.

Here, the Department has agreed to a reassessment. It is the refund itself that is at issue. However, section

11

15-8-601, MCA creates no authority for the Department to refund erroneously collected taxes. It appears the refund function was granted to the Treasurer, as set forth in section 15-1-402, MCA because the Treasurer collects and controls disbursements of tax funds. Section 15-8-601, MCA in speaking only of assessment by the Department, is consistent with this division of duties between the Treasurer and Department.

We hold that the Department of Revenue has no duty under section 15-8-601, MCA to provide a refund of taxes paid on an erroneous assessment.

### III

Eagle argues that the Treasurer should be compelled to sign and comply with the terms of the settlement agreement between Eagle and the Department, even though the Treasurer contends Eagle has no right to a refund because it failed to comply with statutory refund requirements. We disagree.

Eagle has cited no authority for the proposition that a court may compel a party to sign a settlement agreement even though that party objects to the agreement. Eagle characterizes the Treasurer as a mere agent of the Department and a mere stakeholder in this action. Eagle in substance argues that the Department has authority to bind the Treasurer to a refund, a proposition equally unsupported by authority.

The Treasurer has a significant part in the tax refund process. The Treasurer safeguards the refund and collection process as set forth in the statutes. If the statutes have not been complied with, it is the Treasurer's duty to decline a refund. In fact, the Treasurer here has disbursed the 1980 tax funds in compliance with the statute. The Treasurer's presence in the suit represents the importance of the

12

question of actual availability of refund money. The availability of that money generally turns on whether the taxpayer has satisfied the refund requirements. Having failed to satisfy those requirements, Eagle is not now entitled to compel a refund by the Treasurer.

We conclude that the District Court properly denied Eagle's motion to compel the Treasurer to sign and comply with the terms of the settlement agreement, and properly dismissed the action. We affirm the judgment of the District Court.

_____
Justice

We concur:

_____
Chief Justice

_____

_____

_____

_____