*223 JUSTICE SHEEHY,
dissenting:
The factual background of this case is one where the railroad counsel obstructively frustrated the discovery process. District Judge McKittrick, faced with this record of implacable belligerence, restrained himself remarkably by not finding the objectors in contempt and limiting his order to a mere assessment of attorney fees and costs, which this Court has no alternative but to sustain.
The opinion of this Court while not condoning the obstinate blocking of discovery in this case, is at some pains not to hurt anybody’s feelings. The result is a series of nonapplicable statements respecting discovery (especially about Rule 37) which are not pertinent to this case, and which can only be a source of difficulty in future cases when problems of discovery arise.

Identity Of Experts Not To Be Called

The order of the District Court on this subject was as follows:
“1. The defendant is ordered to respond to plaintiff’s interrogatory Number 7 by identifying by name and address those experts it has retained and conferred with even though it has no intention of calling them as witnesses at the time of trial. This information is to be in addition to that information required by Rule 26, M.R.Civ.P., concerning those experts whom the defendant intends to call as witnesses at the time of trial. In ordering the disclosure of these names, the court concurs with the reasoning set forth by the United States District Court for the District of Maryland, in Baki v. BF Diamond Construction Co. (1976), 71 F.R.D. 179.”
The opinion of this Court holds that the identity of nonwitness experts is discoverable under Rule 26(b)(4)(B), M.R.Civ.P., “only upon showing of exceptional circumstances.” It further holds that because the plaintiff made no showing of need for this information that portion of the District Court’s order is reversed.
That was not the reason given by the railroad for refusing to make such disclosure. The interrogatories, and the responses thereto, are as follows:
“Interrogatory No. 7: State the names and addresses of all experts you have retained or conferred with concerning this action or any facts or circumstances which are relevant to this action; and (a) state which experts you expect to call as an expert witness at trial;
“Answer: Objection must be interposed to this interrogatory to the extent that it seeks the identity of experts not to be called as expert *224 witnesses at trial as it seeks information which constitutes work product and seeks to invade the mental impressions, conclusions, opinions or legal theories of BN’s counsel. With regard to expert witnesses who will be called to testify, no decision has been made as yet as to what such witnesses, if any, will testify for BN. It is likely that one or more of plaintiff’s treating physician or other medical providers will be called.
“Interrogatory No. 8: Identify all persons whom you have consulted as experts but do not intend to call at a trial to testify by giving their names and addresses and qualifications.
“Answer: See objection posed to interrogatory number 7.”
Not only did railroad counsel not identify experts who will not be called, they also did not name experts they intended to call at the time of trial.
In Detwiler v. Gall, Landau & Young Construction Co. (1986), 42 Wash.App. 567, 712 P.2d 316, 319, the court warned counsel about playing games with the identities of expert witnesses. It said:
“Although our decision precludes discovery of the identities of nonwitness experts without a showing of exceptional circumstances, we caution counsel against using CR 26(b)(4)(B) as a tactic to delay discovery of an expert witness who will be called to testify at trial. CR 26(e)(1) places a duty upon the parties to seasonably supplement responses to interrogatories requesting information about expert witnesses. Exclusion of the expert’s testimony is an appropriate sanction for failure to supply such supplementary responses (citing cases).”
The real difficulty with the decision relating to the identity of experts not expected to be called for testimony is that nothing in this record shows that any such experts exist. This Court may have been jockeyed into giving an advisory opinion on a purely-imagined factual situation. Moreover, it is quite possible in this case that the experts consulted or retained by the employer are actually employees of the corporation who are expert in their field. Burlington Northern may have, and undoubtedly does have, people in its employ who are outstanding experts on particular subjects, for example the engineering and operation of air brake systems on railroad cars. If such persons exist, plaintiff is entitled to discovery as to “the identity and location of persons having knowledge of any discoverable matter.” Rule 26(b)(1).
In this case we should follow the lead of the North Carolina Court of Appeals which suggested that with respect to such expert wit *225 nesses not expected to be called, that the court should hold an in camera review to consider (1) whether the expert has information of discoverable matter, (2) how the expert acquired the information, and (3) whether the party expects to call the expert as a witness. Mack v. Moore, et al. (1988), 91 N.C.App. 478, 372 S.E.2d 314.
It is remarkable that the opinion does not mention in any respect the case relied upon by the District Court on this subject. Baki v. BF Diamond Construction Co. (1976), 71 F.R.D. 179.

Statements Of Witnesses

The following is the request for production and response thereto relating to this subject:
“Request for Production No. 14: All statements taken from crew members, railroad employees, or other witnesses and which pertain to the accident in which Ed Gilliland was injured at the BN railroad yard in Whitefish, Montana, on August 4, 1988.
“Response: Objection must be interposed as to this request to the extent that it seeks material prepared in anticipation of litigation, work product, or trial material. Subject to said objection, see copies of handwritten statements of Steve Bruce, Greg Loberg, Russ Riley and Robbie Seward produced in response to subpoena duces tecum and attached to the deposition of Mr. Ruse. Also see copies of statements attached to the deposition of Mr. Riley.”
In handling this subject, the District Court ordered:
“3. Pursuant to the Montana Supreme Court’s decision in Cantrell v. Henderson, 718 P.2d 318 [211 Mont. 201,] (Mont. 1986), the defendant is ordered to respond to plaintiff’s request for production No. 14 by providing the plaintiff’s attorney a copy of all statements or transcripts of all recorded statements taken from crew members, railroad employees, or other witnesses, and which pertain to the accident in which the plaintiff was injured at the defendant’s railroad yard in Whitefish, Montana, on August 4, 1988. This order is intended to specifically apply to those recorded statements taken from the defendant’s crew members by Dale Roos, the railroad’s claims agent, on the morning of August 4, 1988, shortly after the plaintiff’s injury occurred.”
There is not any doubt now that plaintiff was entitled to these statements upon his request for production, and was so entitled at every stage of the proceedings before us. That issue has been decided in Cantrell v. Henderson, relied on by the District Court, *226 supra. There should not have been a moment’s quibble about the right of the plaintiff to have those statements when requested.
Instead of so holding, and ending the matter, the plural opinion of this Court goes on gratuitously to talk about “allowing a party to build its case on the other party’s efforts.” That subject has no relevance to the production of statements from witnesses taken in the ordinary course of business. This Court then goes on to conclude that if these witness statements contain material which may be privileged there should be some sort of in camera inspection relating to them. That holding, of course, waters down considerably the effect of Cantrell v. Henderson, and is unnécessary to a decision on the subject of the witness statements before us here.

Photographs and the Subpoena Duces Tecum

The request for photographs and the response was as follows:
“Request for Production No. 10: All photographs taken of the scene where plaintiff was injured on August 4, 1988, or any of the railroad cars on Track 2 at the time of plaintiff’s injury.
“Response: Defendant will agree to an exchange of photographs at a mutually agreeable time and place.”
That response, filed in the District Court on October 14, 1988, was nothing less than a denial of production. The production of discoverable photographs cannot be conditioned upon a statement of “I will if you will.”
On this subject the District Court ordered:
“2. The defendant is ordered to respond to plaintiff’s request for production number 10 by having duplicate photographs made of all photographs taken by the defendant or any of its agent at the scene where plaintiff was injured or of any of the railroad cars at the scene of plaintiff’s injury at the time of his injury. These copies should then be sent to the office of the plaintiff’s attorney with a bill for the costs of duplication. In the alternative, the defendant’s attorneys can send the negatives to plaintiff’s attorney who can have duplicate photographs made at his own expense and then return the negatives to the defendant.”
Under Rule 34(a), M.R.Civ.P., a party may request the production of documents, including photographs. Under Rule 34(b), the request may be made without leave of court. The party upon whom the request is made must serve a written response within the time allowed under Rule 34(b) and if the request is objected to, “the reasons for *227 objecting shall be stated.” The foregoing response does not include any reasons for objecting to the production of the photographs.
Thus, it was that on November 10, 1988, when the deposition of the plaintiff was scheduled to be taken by the defendant, counsel for the plaintiff requested that the photographs be presented to the plaintiff before the deposition was commenced. Counsel for Burlington Northern refused to allow the plaintiff to view the photos before his deposition but stated théy would be made available during a recess or after the deposition had been concluded. This, although since October 14, 1988, or earlier, plaintiff was absolutely entitled under the rules to the production of the photographs for his inspection and copying.
In fact, in this case, plaintiff was entitled to the production of the photographs and of the statements taken of the witnesses at a much earlier time. On August 26, 1988, plaintiff had procured the issuance of subpoenae to witnesses Steve Bruce, Russ Riley and Greg Loberg. Also issued were subpoenae duces tecum for Dale Roos, Robbie Seward, John A. Sitton, and Rich Wetsch. In the subpoenae duces tecum, the witnesses were required to bring with them to their depositions, among other items, the photographs and the statements taken of the witnesses immediately following the injury. These were not produced at the time of the depositions, although no written objections were filed by the railroad at or prior to the time of the taking of the depositions. Some of these non-party witnesses were told by counsel that as to other statements, they did not have to produce them, and that the witnesses could withhold those statements if they wanted to.
The opinion makes no mention of Rule 45, and its affect on this case. Rule 45(d) provides the method of taking the deposition of a witness who is not a party to the action. The rule specifically allows subpoenae commanding the witness to produce and permit inspection and copying of books, papers, documents and tangible things which fall within the scope of the examination permitted by Rule 26(b).
Further, under Rule 45(d), if a person objects to the production of documents under a subpoena, that objection must be made in writing within ten days after the service of the subpoena, or at or before the time specified in the subpoena for compliance. Only when objection is made in writing is the party serving the subpoena not entitled to inspect and copy the material unless an order of the court is obtained. Rule 45(f) provides that any person who without adequate *228 excuse fails to obey a subpoena duces tecum served upon him may be deemed in contempt of court.
At the depositions of these witnesses, neither the statements nor the photographs were produced, despite the properly served subpoenae duces tecum.
We find in Moore’s Federal Practice, Vol. 5A pg. 45-20 this statement:
“A party or witness cannot refuse to obey a subpoena that is validly served on him on the ground that the documents called for are irrelevant or immaterial, or the ground of privilege against self-incrimination, or on any other ground, but should make a motion to quash within the time provided in Rule 45(b).”
On this subject, Moore felt it proper to quote the language of the late Chief Justice Vincent in United States v. Bryan (1950), 339 U.S. 323, 331, 70 S.Ct. 724, 94 L.Ed. 884:
“Persons summoned as witnesses by competent authority have certain minimum duties and obligations which are necessary concessions to the public interest in the orderly operation of legislative and judicial machinery. A subpoena has never been treated as an invitation to a game of hare and hounds, in which the witness must testify only if cornered at the end of the chase. If that were the case, then, - indeed, the great power of testimonial compulsion, so necessary to the effective functioning of courts and legislatures, would be a nullity. We have often iterated the importance of this public duty, which every person within the jurisdiction of the Government is bound to perform when properly summoned.”
Plaintiff in this case was proceeding properly under Rule 45 in obtaining discovery and production of documents from a person not a party. Rule 34 deals with the discovery or production of items from a party. Rule 45(b) provides for a subpoena duces tecum to any person, whether or not a party, to produce documents, papers, or other enumerated items at the taking of a deposition or at a hearing or trial.
The record here is clear that the railroad not only contumaciously refused to produce documents after a proper request for production under Rule 34; it earlier allowed its witness employees to risk contempt of court in failing to produce those pertinent documents when their depositions were taken after the service upon them of a subpoena duces tecum.

*229
Severity of Sanctions

I particularly disagree with the portion of the opinion which recites that “the record does not reveal any egregious conduct by defendant which would warrant the severe sanctions imposed in this case.”
Apart from failing to produce the photographs in a timely manner, the opinion states “our review of the record, however, reveals that there were no other significant discovery abuses by defendant.” The opinion then goes on to excuse the tactics of the defendant on the grounds that “most of the requested discovery” had been supplied.
The defendant here had refused to produce statements to which the plaintiff was clearly entitled under Cantrell v. Henderson (1986), 221 Mont. 201, 718 P.2d 318; had withheld the photographs subject to a subpoena duces tecum, at a nonparty’s deposition, and refused to produce them at the plaintiff’s deposition; and had told nonparty witnesses that they did not have to produce their personal statements if they did not want to. If these actions do not amount to egregious conduct, then this Court has raised the threshold of egregious conduct so high that no recalcitrant can overstep it.
The purported “sanction” revérsed by the opinion is not a sanction at all but rather a response to a motion for a protective order granted by the District Court.
On November 11, 1988, the plaintiff moved the court for its order compelling the defendant to produce the evidence that had been withheld. At the defendant’s request, a hearing on that motion was not scheduled until December 5, 1988. On November 11, 1988, the plaintiff also moved the court for a protective order enjoining the defendant from conducting any further discovery in the case until ten days after it had responded to plaintiff’s request for discovery by producing the information and documents that were being withheld.
Following the motion for a protective order by the plaintiff, the defendant issued a notice of deposition on November 28, 1988, that the deposition of the plaintiff would be taken in Kalispell on Wednesday, December 7, 1988.
On November 21, 1988, the District Court issued its order to show cause to Dale Roos, a nonparty witness, and to Charles Dearden and James Robischon, the defendant’s counsel, to appear and show cause on December 5, 1988, why each of them should not individually be held in contempt for intentional disregard of a lawful subpoena. (The District Court has yet to rule on the show-cause order.)
In response, on December 2, 1988, the defendant filed in the District Court a motion to dismiss plaintiff’s complaint, or in the alter *230 native, to order discovery, requiring the plaintiff to answer interrogatories and requests for production. In that motion the defendant Burlington Northern moved the court “to make an order requiring plaintiff to respond to discovery before he undertakes any other discovery and such other orders that the court may deem just.” (The same protective order this Court finds “severe.”)
At the December 5, 1988 hearing before the District Court, the court ruled from the bench on most of the plaintiff’s motions relating to discovery. The court took two issues under-advisement and requested additional briefing. One of the issues was the identification of nontestifying expert witnesses.
After the December 5 hearing, when it was clear what the court’s ruling on photographs was going to be, the defendant mailed, on December 13, 1988, the photographs to the plaintiff’s attorney.
On February 10, 1989, the court issued its written order in this cause. In three separate paragraphs in the order, the District Court ordered the defendant to produce a catalogue of safety or instructional films or brochures to the plaintiff, to produce the photographs, and to produce the statements taken from the witnesses immediately following the accident by the agent of Burlington Northern. The court went on to make two further orders that it deemed necessary in the premises:
“IT IS FURTHER ORDERED that due to the defendant’s failure to provide the aforementioned information and evidence prior to being ordered to do so, the following relief is granted:
“1. In the event that the statements from Greg Loberg, Robbie Seward and Steve Bruce suggest areas of examination which could have been covered during their previous depositions if their statements had been produced when requested, plaintiff may re-depose those witnesses.
“2. The defendant is enjoined from conducting any further discovery in this case until at least ten days after it has complied with this order by responding to the aforementioned interrogatories and producing those items it has been ordered to produce.”
Thus, the District Court, in the face of a clear record of obstruction on the part of the railroad, responded to the motion for a protective order and entered the requirement of a ten-day compliance before further discovery could be had by the defendant. The effect of the opinion is to remove this protective order and force the plaintiff to a deposition in spite of the power of the District Court to *231 control the sequence and timing of discovery. Rule 26(d), M.R.Civ.P.
Thus, the discussion in the opinion regarding Rule 37 and the applicable sanctions in it has no relevance here. This was a protective order, issued by the District Court under Rule 26(c), M.R.Civ.P., which provides:
“Protective orders. Upon motion by a party or by the person from whom discovery is sought, and for good cause shown, the court in which the action is pending or alternatively, on matters relating to a deposition, the court or the district court where the deposition is to be taken, may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:
“(1) that the discovery not be had;
“(2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place;
“(3) that the discovery may be had only by a method of discovery other than that selected by the party seeking discovery; . . .” (Emphasis supplied.)
The protective order issued by the District Court was clearly well within its power, and should be upheld by this Court.
Finally, it should be noted that the so-called “sanction” is one completely within the power of the defendant Burlington Northern to remove. All Burlington Northern had to do was to comply with a just order of the District Court and the limitation would be removed. If this “sanction” constituted punishment, it is punishment which the defendant has willingly embraced.
I agree that the plaintiff here is entitled to the attorney fees and costs as fixed by the District Court; otherwise I disagree with the rationale and approach of the opinion in this cause.
After this dissent was first proposed, there was inserted in the opinion the language that Rule 26(c) (the protective order) does not apply because there has been no annoyance, embarrassment, oppression, or undue burden or expense under the Rule. That gratuitous conclusion is completely unsupported in the record. The District Court has ruled that plaintiff has been put to undue burden and expense in excess of $7,000. The oppressive obstinancy of the railroad to refuse discovery in this case fits every category of the preconditions in Rule 26(c) for a protective order. Moreover, the gratuitous conclusion ignores the power of the district court, in the interests of justice, to control the timing and sequence of discovery *232 under Rule 26(d). It should be clear to all that a district court has a broad discretion to control discovery so as to make the rules of discovery work properly, and that is what the District Court strove to do in this case. This opinion in itself frustrates that process.
On August 28, 1989, while this case was still pending in this Court, and before the opinion was in final form, a majority of Justices, without a Court conference on the subject, entered an order vacating the trial date of this cause that had been set by the District Court. The result was that the plaintiff, whose income from employment stopped on the date of his injury, faces a further delay before he can arrange a trial date in the District Court. In his desperation, the plaintiff filed a motion in this Court on September 5, 1989, offering to waive his right to all discovery and expenses if we would simply dismiss the application. From that viewpoint Justice McDonough is correct in his dissent. We have not serviced justice or the parties by the holding in this case.
JUSTICE HUNT concurs in the foregoing dissent.