No. 99-224

IN THE SUPREME COURT OF THE STATE OF MONTANA

2000 MT 163

300 Mont. 284

4 P.3d 26

DOROTHY JEFFERSON, and all persons

similarly situated,

Plaintiffs and Appellants,

v.

BIG HORN COUNTY and STATE OF

MONTANA,

Defendants and Respondents.

APPEAL FROM: District Court of the Thirteenth Judicial District,

In and for the County of Big Horn,

The Honorable G. Todd Baugh, Judge presiding.

COUNSEL OF RECORD:

For Appellants:

Sam S. Painter, Elk River Law Office, P.L.L.P.; Billings, Montana

For Respondents:

Brendan R. Beatty, Department of Revenue; Helena Montana

Christine Cooke, Big Horn County Attorney; Hardin, Montana

Submitted on Briefs: October 14, 1999

Decided: June 20, 2000

Filed:

_____

Clerk

Justice Jim Regnier delivered the opinion of the Court.

¶1 The Plaintiffs appeal the order of the Thirteenth Judicial District Court, Big Horn County, dissolving part of its previous judgment. We affirm.

¶2 This appeal raises the following issue:

¶3 Whether the doctrine of res judicata barred the District Court from vacating that portion of its judgment which granted future tax exemptions for the Crow Tribe Members?

BACKGROUND

¶4 On January 31, 1989, Dorothy Jefferson, an enrolled member of the Crow Tribe, filed an action on behalf of herself and all persons similarly situated against Big Horn County and the State of Montana (hereinafter referred to collectively as "Big Horn County") for declaratory and injunctive relief and a refund of property taxes paid, in the Thirteenth Judicial District Court, Big Horn County. In her complaint, Jefferson challenged Big Horn County's authority to impose and collect real property taxes on land owned in fee simple by enrolled members of the Crow Tribe and located within the boundaries of the Crow Reservation. Jefferson requested that the court declare Big Horn County without jurisdiction to tax property owned by the Plaintiff class, enjoin Big Horn County from taxing that property, and direct Big Horn County to refund all taxes collected on that property. Pursuant to § 15-1-407, MCA, the court certified Jefferson's cause of action as a class action. The class consisted of "all enrolled members of the Crow Tribe who own land located within the exterior boundaries of the Crow Indian Reservation which was

never allotted under the General Allotment Act and upon which Big Horn County levies real property taxes." (hereinafter "Crow Tribe Members.")

¶5 On July 10, 1989, the Crow Tribe Members filed a motion for partial summary judgment. In their brief supporting their motion, the Crow Tribe Members requested that the court "permanently enjoin [Big Horn County] from assessing and collecting taxes." However, pursuant to a joint motion, the action was stayed pending the decision by the Ninth Circuit Court of Appeals in *Confederated Tribes and Bands of the Yakima Nation v. County of Yakima* (9th Cir. 1990), 903 F.2d 1207. In *Yakima Nation*, the issue was whether real property allotted under the Indian General Allotment Act of 1887 ("GAA"), 25 U.S.C. § 349, and owned in fee-patent by enrolled Tribe members was subject to state ad valorem taxation pursuant to § 6 of the GAA.

¶6 In the later half of the 19th century, the federal government changed its policy of setting aside reservation lands for the exclusive use and control of Native American tribes and moved toward a policy of allotment. Under the allotment policy, Congress removed significant portions of reservation land from tribal ownership and federal protection, allotting some parcels to individual tribal members in fee simple. One of the objectives of allotment was to assimilate Native Americans into society at large. Most of the allotments were made pursuant to the GAA. Section 5 of the GAA provided that parcels of tribal land would be allocated to individual Native Americans and held in trust by the United States for a 25-year period, after which the federal government would convey title to individual allottees. Section 6 of the GAA, as amended by the Burke Act, 25 U.S.C. § 349, provides that once title to lands have been conveyed "all restrictions as to sale, incumbrance, or taxation of said land shall be removed." In 1934 Congress enacted the Indian Reorganization Act, 25 U.S.C. § 461 et seq., reflecting a dramatic shift in policy toward Native Americans. The Reorganization Act ended the practice of making allotments to individual tribe members. *See generally Cass County, Minn. v. Leech Lake Band of Chippewa Indians* (1998), 524 U.S. 103, 106-08, 118 S. Ct. 1904, 1906-07, 141 L. Ed. 2d 90.

¶7 The Ninth Circuit in *Yakima* concluded that the GAA manifested Congress's unmistakably clear intent to permit states to tax land allotted under the GAA. Subsequently, on April 3, 1990, the District Court granted summary judgment in favor of the Crow Tribal Members, stating:

All authority cited to this Court that governs taxation of the property in question is

based on the General Allotment Act. Plaintiff's land is not and never has been subject to the General Allotment Act. Therefore, defendants cannot tax plaintiff's land because the General Allotment Act, which contains the Congressional permission for taxation that defendants rely on, does not apply to plaintiff's land.

¶8 On August 21, 1990, Big Horn County and the Crow Tribe Members filed a Joint Motion for Entry of Judgment requesting the court to enter their proposed judgment. On August 28, 1990, the District Court issued an order implementing its Judgment. The District Court required Big Horn County to refund taxes paid under protest and remove the Crow Tribe Members from the tax rolls. The court stated that "[t]his declaratory ruling establishes a future tax exempt status for land that is located within the Crow Reservation, has never been subject to the General Allotment Act and is owned by an enrolled Crow Tribe member." The District Court also stated that its order granting summary judgment in favor of the Crow Tribe Members "established as a matter of law that Defendants may not collect property tax on a Crow Tribe member's land within the Crow Reservation that is not and never has been subject to the General Allotment Act."

¶9 On June 20, 1997, Big Horn County filed a Motion for Partial Vacation of Judgment and Supporting Memorandum requesting the District Court vacate that portion of its order establishing a future tax exempt status for the Crow Tribe Members pursuant to Rule 60 (b), M.R.Civ.P. Big Horn County claimed that subsequent federal decisions had established that alienable land owned by enrolled members of tribes was subject to state ad valorem taxes even if it had not been patented in fee pursuant to the GAA. The court did not rule on the motion within 60 days and it was deemed denied under Rule 60(c), M.R. Civ.P.

¶10 On December 12, 1997, Big Horn County filed a Motion to Dissolve Injunction pursuant to § 27-19-401, MCA, asserting that due to a change in the applicable law, there were insufficient grounds to continue the initial order. On October 2, 1998, Big Horn County supplemented its motion to dissolve the injunction with a copy of the United States Supreme Court's decision in *Leech Lake*. In *Leech Lake*, the Supreme Court rejected the distinction drawn in post-*Yakima* federal appellate decisions which had held that lands not allotted pursuant to the GAA were not subject to state ad valorem taxes. The Court held that when Congress makes reservation lands freely alienable, it is "unmistakably clear" that Congress intends that land to be taxable by state and local governments unless a contrary intent is "clearly manifested." *Leech Lake*, 524 U.S. at 113, 118 S. Ct. at 1910.

¶11 On December 18, 1998, the District Court granted Big Horn's motion and dissolved that portion of its Judgment dated August 28, 1990, which had granted a future tax exempt status to the Crow Tribe Members. The Crow Tribe Members appeal.

## STANDARD OF REVIEW

¶12 Whether a district court has the authority to modify or vacate part of its previous judgment is a question of law. We review a district court's conclusion of law to determine whether it is correct. *See Carbon County v. Union Reserve Coal Co.* (1995), 271 Mont. 459, 469, 898 P.2d 680, 686.

## DISCUSSION

¶13 Whether the doctrine of res judicata barred the District Court from vacating that portion of its judgment which granted future tax exemptions for the Crow Tribe Members?

¶14 As part of its Judgment dated August 28, 1990, the District Court stated that "[t]his declaratory ruling establishes a future tax exempt status for land that is located within the Crow Reservation, has never been subject to the General Allotment Act and is owned by an enrolled Crow Tribe member." The District Court also ordered Big Horn County to refund property taxes paid under protest by Crow Tribe Members. On December 18, 1998, the court dissolved that portion of its judgment which had established a future tax exempt status for Plaintiffs' lands.

¶15 The Crow Tribe Members assert that the District Court was barred by the doctrine of res judicata from dissolving a portion of its judgment. The State contends that the portion of the judgment which had established a future tax exempt status for the Plaintiffs was a form of injunctive relief that the District Court could modify or dissolve under *Santa Rita Oil & Gas Co. v. State Board of Equalization* (1941), 112 Mont. 359, 116 P.2d 1012 (hereinafter "*Santa Rita II*"). The Crow Tribe Members respond that if the portion of the judgment granting them a future tax exempt status can be characterized as injunctive relief, the District Court could not modify it under *Santa Rita II* absent a change in the controlling facts on which the injunction rested.

¶16 The judgment issued by the District Court on August 28, 1990, was specifically granted pursuant to §§ 15-1-406, 407, and 408, MCA, provisions which outline the declaratory judgment and alternative remedy procedures and forms of relief for aggrieved

taxpayers. Section 15-1-406, MCA (1987), provided, in relevant part:

### Alternative Remedy-Declaratory Judgment.

(1) An aggrieved taxpayer may . . . bring a declaratory judgment action in the district court seeking a declaration that a tax levied by the state or one of its subdivisions was illegally or unlawfully imposed or exceeded the taxing authority of the entity imposing the tax.

Section 15-1-408 (1987), MCA, provided, in relevant part:

If the district court determines that the tax was illegally or unlawfully imposed . . . the judgment may direct:

(1) that the revenue collected under the illegal tax be directly refunded . . .

. . . .

(3) such other remedy as the court considers appropriate.

¶17 Plaintiffs challenged "was illegally or unlawfully imposed." Once it reached this determination, the District Court was authorized to grant at least two remedies: a refund of the revenue collected and "such other remedy as the court consider[ed] appropriate." § 15-1-408, MCA (1987). This is precisely what the District Court did. It determined that the property tax previously imposed by the State and challenged by the Plaintiffs was unlawful. This conclusion authorized the court to award a refund of the revenue collected and to fashion any other remedy it considered appropriate. In this regard, the District Court "establish[ed] a future tax exempt status" for Plaintiffs' land.

¶18 "Any order which requires a person to refrain from a particular act for any period of time, no matter what its purpose is an 'injunction.'" *Sheridan County Elec. Co-op., Inc., v. Ferguson* (1951), 124 Mont. 543, 554, 227 P.2d 597, 603. What distinguishes an injunction from other forms of relief is that it is an equitable remedy granting prospective, as opposed to retrospective, relief. *See generally* 42 Am. Jur. 2d *Injunctions* § 1 (1969) (observing that an injunction is a form of relief which commands or prohibits the doing of certain acts in the future); *see also State ex rel. Tillman v. District Court* (1936), 101 Mont. 176, 186, 53 P.2d 107, 112 (noting that an injunction "will not lie to prevent an act

already committed").

¶19 As authorized by § 15-1-408, MCA (1987), the District Court's judgment contained both retrospective and prospective relief. The District Court granted retrospective relief by directing the State to refund property taxes paid in 1988 and 1989 by Dorothy Jefferson, the named Plaintiff, and for property taxes paid under protest in 1989 by similarly situated taxpayers. Pursuant to its authority under § 15-1-408(3), MCA (1987), the court fashioned prospective relief by establishing a future tax exempt status for the property of Crow Tribe Members subject to the judgment and ordering the Big Horn County Assessor to remove this property from its tax rolls. Although not expressly referred to as injunctive relief, this portion of the District Court's judgment is clearly in the form of perpetual injunctive relief. It commands the State to refrain from imposing and collecting taxes in the future on the real property of Crow Tribe Members located within the Crow Reservation and not subject to the GAA. We note that the Crow Tribe Members were aware of the nature of this relief when they specifically requested in their Brief in Support of Motion for Summary Judgment filed July 10, 1989, that the court enter an order "*permanently enjoining* [Big Horn County] from assessing or collecting taxes on such property." (Emphasis added.)

¶20 The Dissent asserts that injunctive relief was "specifically precluded by" and "contrary to the specific prohibition of injunctive relief found at § 15-1-404, MCA." Dissent, ¶¶ 36 and 37. However, § 15-1-404, MCA (1987), did not preclude injunctions. Rather, this provision stated that "[t]he remedies hereby provided shall supersede the remedy of injunction and all other remedies *which might be invoked to prevent the collection of taxes or licenses alleged to be irregularly levied or demanded*." Section 15-1-404, MCA (1987). More significantly, the very next statutory provision, § 15-1-405, MCA (1987), provided:

"No injunction must be granted . . . to restrain the collection of a tax . . . *except*:

(1) where the tax . . . sought to be enjoined is illegal or is not authorized by law . . . .

(2) where the property is exempt from taxation.

¶21 Clearly, § 15-1-404, MCA (1987), did not preclude the granting of all injunctions in tax protest cases because the next provision permitted injunctions restraining the collection of a tax where the tax sought to be enjoined was illegal or where the property was exempt from taxation. The prohibition on injunctive relief contained in § 15-1-404, MCA (1987), was limited to injunctions "to prevent the collection of taxes or licenses

alleged to be irregularly levied or demanded." Even within this class of cases involving taxes irregularly levied or demanded, a court could still grant an injunction "in unusual cases" where the remedies provided under Title 15, Chapter 1, Part 4, were "deemed by the court to be inadequate." Section 15-1-404, MCA (1987). Plaintiffs did not allege that the property tax challenged was "irregularly levied or demanded." Rather, they alleged that the tax was unlawfully imposed and that their property was exempt from taxation. Section 15-1-405, MCA (1987), expressly empowered the court to grant an injunction restraining the collection of this tax.

¶22 The Dissent also argues that "[t]he declaratory relief was sufficient to exempt the taxpayer's property from taxation on a stand-alone basis. It was not necessary to additionally enjoin Big Horn County or the State of Montana from prospective conduct." Dissent, ¶ 37. The correctness of this argument hinges on the scope of a declaratory judgment under § 15-1-406, MCA (1987).

¶23 Section 15-1-406(1), MCA (1987), provided that an aggrieved taxpayer may seek a declaration that "a tax *levied* by the state . . . *was* illegally or unlawfully *imposed*." (Emphasis added.) Significantly, the statute used the past tense. Furthermore, subsection (2) of this statute required that a declaratory judgment action "be brought within 90 days of the imposition of the tax;" and subsection (3) required that "[t]he taxes that are being challenged under this section must be paid when due as a condition of continuing the action." We think the import of these provisions is clear. A taxpayer who brought a declaratory judgment action pursuant to these provisions was required to bring the action within 90 days after the tax was imposed and pay the tax. If the aggrieved taxpayer complied with these requirements, a district court was empowered to declare that the specific tax imposition which was timely challenged and paid *was unlawfully imposed.*

¶24 This declaratory judgment provision did not permit a district court to declare that taxes not yet imposed would be unlawful if and when the state imposes those taxes. A declaratory judgment under § 15-1-406, MCA (1987), simply could not speak to the legality of future tax impositions. Instead, it only established that the specific tax imposition challenged was unlawful. As we noted in a previous case involving state ad valorem property taxation:

> [E]ach tax year is singular and self-contained. Each year the taxpayer inventories and reports his assets, the Department assesses the property and sends that taxpayer notice of the property value. . . . *A separate tax is imposed for each year.*

*Eagle Communications v. Flathead County (1984), 211 Mont. 195, 203, 685 P.2d 912, 916 (emphasis added). Consequently, the scope of the declaratory judgment was limited to the lawfulness of the singular tax imposition properly challenged. In order to prevent future similar impositions, the District Court had to order relief beyond a declaratory judgment. As noted above, § 15-1-408(3), MCA (1987), enabled the court to grant "such other remedy" it considered appropriate. In this case, the District Court granted prospective relief-preventing the State from collecting property taxes in the future.*

¶25 In summary, § 15-1-404, MCA (1987), did not preclude the District Court from ordering injunctive relief, nor could the court's declaratory judgment exempt the Plaintiffs' property from future taxation without a further order of injunctive relief. Because that portion of the District Court's Judgment which ordered a "future tax exempt status" was an order granting prospective relief by restraining the Defendants from imposing an ad valorem property tax on Plaintiffs' property in the future, it was injunctive relief. Accordingly, the only remaining issue is whether the court was authorized to modify or dissolve its injunction. In this regard, the Crow Tribe Members assert that if that portion of the District Court's Judgment can be characterized as injunctive relief, the District Court was without authority to modify it absent a change in the controlling facts.

¶26 A court may modify or dissolve perpetual injunctive relief based on a subsequent change in the judicial interpretation of a law. In *Santa Rita II,* we stated that "[t]he latter point hardly requires citation to authority, for obviously it is not equitable to continue to restrain a party from actions no longer unlawful [when] the change in law has come about . . . through an authoritative change in judicial construction by courts." 112 Mont. at 368, 116 P.2d at 1016-17

¶27 In *Santa Rita Oil & Gas Co. v. State Board of Equalization* (1936), 101 Mont. 268, 54 P.2d 117 (hereinafter *"Santa Rita I"*), we enjoined the State from levying taxes arising out of the production and recovery of oil from land leased to the plaintiff by a Native American who was the owner of an allotment of land under a trust patent because it amounted to a tax on the property or an instrumentality of the federal government. Subsequently, in *Santa Rita II*, the State Board of Equalization petitioned this court to vacate the injunction on the ground that the judicial interpretation of the law upon which the injunction was based had changed. The respondent asserted that the original decision was res judicata and therefore could not be modified or vacated. We held that the doctrine of res judicata did not bar a court from modifying or vacating an injunction, stating:

> An injunction is merely the process by which the court enforces equity and it has not only the power but the duty to modify or annul its injunction as equity demands. A

final or permanent injunction is a continuing process over which the equity court necessarily retains jurisdiction in order to do equity. And if the court of equity later finds that the law has changed or that equity no longer justifies the continuance of the injunction, it may and should free the defendant's hands from the fetters by which until then its activities have been prevented, thus leaving it free to perform its lawful duties.

*Santa Rita II, 112 Mont. at 370, 116 P.2d at 1017. Observing that the United States Supreme Court had overruled its previous decisions regarding state taxation of federal instrumentalities upon which we had based a portion of our injunction, we granted the State's motion and vacated that part of our injunction.*

¶ 28 In *Santa Rita II*, we recognized the principle that a court has the inherent power to modify or vacate an injunction when the law upon which that injunction was based has been changed by subsequent judicial interpretation. As in *Santa Rita I*, the District Court judgment granted the Crow Tribe Members injunctive relief in the form of future tax exemptions for their real property which prevented the State from levying, assessing, and collecting taxes. The Crow Tribe Members concede that the judicial interpretation of the law upon which that relief was based has subsequently changed under the Supreme Court's decision in *Leech Lake*. Accordingly, we conclude that the District Court did not err when it vacated the injunctive portion of its judgment.

¶29 Affirmed.

/S/ JIM REGNIER

We Concur:

/S/ J. A. TURNAGE

/S/ KARLA M. GRAY

/S/ W. WILLIAM LEAPHART

Justice Terry N. Trieweiler dissenting.

¶30 I dissent from the majority opinion. I would reverse the judgment of the District Court.

¶31 The majority opinion is predicated on the majority's conclusion that the judgment entered by the District Court for the Thirteenth Judicial District in Big Horn County on August 28, 1990, was in the nature of injunctive, rather than declaratory relief, and that, therefore, principles of *res judicata* did not bar reconsideration of the issues resolved by that judgment. I disagree.

¶32 As noted in the Court's original judgment:

> [T]his action is brought under §§ 15-1-406 and 15-1-407(3), MCA. The procedures of §§ 15-1-406, 15-1-407, and 15-1-408, MCA, the alternative remedy of declaratory judgment in tax matters, control this action.

¶33 In other words, Plaintiffs' action was brought pursuant to Title 15, Chapter 1, Part 4, which provides the method for protesting property taxes and recovering those amounts which have been unlawfully imposed. Section 15-1-404, MCA, of that chapter specifically provides as follows:

> The remedies hereby provided shall supersede the remedy of injunction and all other remedies which might be invoked to prevent the collection of taxes or licenses alleged to be irregularly levied or demanded, except in unusual cases where the remedies hereby provided are deemed by the court to be inadequate.

¶34 Section 15-1-406, MCA, pursuant to which the parties agreed relief was entered, provides in relevant part as follows:

> (1) An aggrieved taxpayer may bring a declaratory judgment action in the district court seeking a declaration that:
>
> . . . .
>
> (b) a tax authorized by the state or one of its subdivisions was illegally or unlawfully imposed or exceeded the taxing authority of the entity imposing the tax.
>
> . . . .
>
> (5) The remedy authorized by this section is the exclusive method of obtaining a declaratory judgment concerning a tax authorized by the state or one of its subdivisions.

¶35 Relief was granted pursuant to § 15-1-408, MCA, which provides that:

If the district court determines that the tax was illegally or unlawfully imposed or exceeded the taxing authority of the entity imposing the tax, the judgment may direct:

(1) that the revenue collected under the illegal tax be directly refunded to the taxpayers who have paid the illegal tax and who have not been excluded from the action;

(2) that the revenue collected under the illegal tax be used to reduce a similar levy in the ensuing tax year;

(3) that the assessment be changed for the taxpayer or taxpayers who brought the action as well as for all similarly situated taxpayers; or

(4) any other remedy as the court considers appropriate.

¶36 In this case, the court granted relief pursuant to subparagraphs (1) and (4), of § 15-1-408, MCA. It ordered that illegally collected taxes be refunded to the taxpayers who brought the action and that they not be collected in the future. However, both forms of relief were pursuant to the declaratory judgment action provided for in § 15-1-406, MCA. They were not in the form of injunctive relief which is specifically precluded by § 15-1-404, MCA. In fact, nowhere in the District Court's August 28, 1990 order is the word "enjoin" or any of its derivative forms mentioned. The Court stated:

It is the judgment of this Court that Defendants may not collect property tax on Plaintiffs' land within the boundaries of the Crow Reservation that has never been allotted under the General Allotment Act and is owned by an enrolled member of the Crow Tribe. The Court stated:

. . . .

Section 15-1-406, MCA, states in part:

The decision of the court shall apply to all similarly situated taxpayers except those taxpayers who are excluded under 15-1-407.

Section 15-1-408, MCA, allows this Court to fashion a remedy to implement the declaratory judgment.

. . . .

(B) Removal from tax rolls.

This declaratory ruling establishes a future tax exempt status for land that is located within the Crow Reservation, has never been subject to the General Allotment Act and is owned by an enrolled Crow Tribe member. This land may be removed from the tax rolls as follows:

¶37 In other words, the principal thrust of the District Court's 1990 judgment was to provide for declaratory relief. The declaratory relief was sufficient to exempt the taxpayer's property from taxation on a stand-alone basis. It was not necessary to additionally enjoin Big Horn County or the State of Montana from prospective conduct. Any incidental language to that effect was gratuitous, unnecessary, and, in fact, contrary to the specific prohibition of injunctive relief found at § 15-1-404, MCA.

¶38 For these reasons, when federal decisional law changed from what had been in effect at the time of the District Court's August 28, 1990 order, the only procedure available to the State or to the county for relief from that judgment was Rule 60(b)(6), M.R.Civ.P., or the residual clause of Rule 60(b), M.R.Civ.P. Big Horn County filed a motion for Rule 60(b), M.R.Civ.P. relief. The District Court did not act on that motion within 60 days and it was therefore deemed denied pursuant to Rule 60(c), M.R.Civ.P. However, neither the county nor the State appealed from the District Court's denial of their Rule 60(b) motion. Therefore, the District Court's denial is final.

¶39 For these reasons, I would reverse the judgment of the District Court and I dissent from the majority opinion.

/S/ TERRY N. TRIEWEILER

Justice William E. Hunt, Sr., and Justice James C. Nelson, join in the foregoing dissenting

opinion.

/S/ JAMES C. NELSON

/S/ WILLIAM E. HUNT, SR.