No. 00-832

IN THE SUPREME COURT OF THE STATE OF MONTANA

2002 MT 102

JON C. WELLS and CANDY A. WELLS,

      Plaintiffs and Respondents,

    v.

M. DUANE YOUNG and NANCY YOUNG,
husband and wife,

      Defendants and Appellants.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
In and for the County of Big Horn,
The Honorable Blair Jones, Judge presiding.

COUNSEL OF RECORD:

      For Appellants:

          Martha Sheehy, Sheehy Law Firm, Billings, Montana

      For Respondents:

          Jeffrey J. Oven, Crowley, Haughey, Hanson, Toole & Dietrich, P.L.L.P.,
Billings, Montana

Submitted on Briefs:  August 23, 2001

Decided:       May  15,  2002

Filed:

_____
Clerk

Justice Jim Regnier delivered the Opinion of the Court.

¶1   M. Duane Young and Nancy Young ("the Youngs") appeal from the July 25, 2000, Findings of Fact, Conclusions of Law and Order of the Montana Twenty-Second Judicial District Court, Big Horn County, permanently enjoining flood irrigation practices on their property. Additionally, the Youngs appeal from the District Court's October 4, 2000, Order denying their Rule 59(g), M.R.Civ.P., motion to alter or amend the judgment. We reverse.

¶2   We find one issue dispositive of this appeal:

¶3   Did the District Court abuse its discretion when it permanently enjoined lawful flood irrigation practices on the Youngs' property?

FACTUAL AND PROCEDURAL BACKGROUND

¶4   The Youngs own thirteen acres of real property near Hardin, Montana, which they purchased in 1988. Floyd Warren, Inc., leases approximately four acres of the Youngs' property for crop production. The Youngs and their predecessors in interest have irrigated the four acre parcel for decades. Actual irrigation of the property is sporadic due to the lack of water and the type of crop selected for production. The annual income derived by the Youngs from crop production on their irrigated parcel of property is approximately $400.00.

¶5   In 1992, Jon C. Wells and Candy A. Wells ("the Wells") purchased real property and built a home adjacent to the Youngs' irrigated parcel of property. Between the summer of 1994 and the fall of 1998, the Youngs' property was flood irrigated three times.

2

On each occasion, the Wells thereafter experienced flooding in the crawl space of their home. The Wells filed suit against the Youngs in the District Court claiming damages in excess of $80,000.00 based on tort theories of negligence, nuisance, and trespass. In addition, the Wells sought a permanent injunction prohibiting future flood irrigation on the Youngs' property.

¶6 Following a bench trial, the District Court entered its Findings of Fact, Conclusions of Law and Order on July 25, 2000. The specific findings of the District Court are critical to our analysis and will therefore be explained in some detail.

¶7 The District Court found that the flood irrigation practices employed on the Youngs' property are "typical of the practice of irrigators who utilize flood irrigation on crops." Moreover, the District Court determined that it is unlikely that the flood irrigation practices conducted on the Youngs' property caused a rise in groundwater so substantial as to cause the flooding experienced by the Wells. The District Court found that the "most plausible and credible explanation" of the flooding experienced by the Wells is the existence of a subsurface pathway or conduit, "most likely" an abandoned United States Bureau of Indian Affairs ("BIA") ditch, extending from the head ditch on the Youngs' property to the Wells' home. Despite entering the prior findings, the District Court also found that the "saturation of the soils around the Wells' residence and the entry of water into the Wells' crawl space occurred as a result of the flood irrigation practices used in irrigating the Youngs' field in 1994 and in 1998." The District Court determined that the conduit or possibly other

3

conditions responsible for the water flooding the Wells' property existed prior to the Wells' purchase of the property and the construction of their home.

¶8 Since the irrigation practices on the Youngs' property predated the construction of the Wells' home, the District Court reasoned that § 85-7-2212(2), MCA, precluded the Wells from recovering damages. Under this analysis, the Wells could not recover on their trespass actions pursuant to § 85-7-2212(2), MCA. Similarly, the District Court concluded that the Wells' nuisance claim was barred by § 27-30-101(3), MCA. The District Court disposed of the negligence claim by focusing on the Wells' failure to establish that the Youngs' flood irrigation practices breached the standard of care of a reasonable farm irrigator engaged in flood irrigation.

¶9 Nonetheless, the District Court permanently enjoined the Youngs from irrigating their property. The District Court determined that future irrigation without modification to the head ditch would result in "an unreasonable and substantial risk of continuing harm and irreparable injury to the Wells' property." Consequently, the District Court concluded that the imposition of a permanent injunction preventing flood irrigation on the Youngs' property was justified until said irrigation practices did not result in the saturation of soil on the Wells' property and the entry of water into the Wells' home.

¶10 After entry of the District Court's July 25, 2000, Order, the Youngs moved the District Court to alter or amend its judgment pursuant to Rule 59(g), M.R.Civ.P. The Youngs requested that the

4

permanent injunction be vacated based upon the court's determination that their irrigation practices were lawful. On September 25, 2000, the District Court conducted a hearing on the Youngs' motion. On October 4, 2000, the District Court entered its Order denying the Youngs' motion.

¶11 The District Court relied on our decision in *Madison Fork Ranch v. L & B Lodge Pole Timber Products* (1980), 189 Mont. 292, 615 P.2d 900, to support its conclusion that injunctive relief is available as a remedy to enjoin lawful activity when equity so warrants. The District Court noted that our holding in *Madison Fork* relied strictly on equitable principles of law and did not cite § 27-19-102, MCA. Nonetheless, the court determined that its imposition of the permanent injunction in this case comported with the procedures outlined in § 27-19-102, MCA. The court found that the continued use of flood irrigation on the Youngs' property would result in immediate, irreparable and substantial harm to the Wells' home, and thus the need to protect the Wells from substantial loss which they may potentially endure as a result of the irrigation. The court noted that the Youngs net only nominal income from such irrigation. The Youngs appeal.

STANDARD OF REVIEW

¶12 The grant or denial of an injunction is within the discretion of the district court and will not be reversed absent an abuse of that discretion. *Engel v. Gampp*, 2000 MT 17, ¶ 33, 298 Mont. 116, ¶ 33, 993 P.2d 701, ¶ 33 (citation omitted). Moreover, the granting of an injunction is an equitable remedy. *Talley v. Flathead Valley Community College* (1993), 259 Mont. 479, 491, 857

5

P.2d 701, 708 (citation omitted).  Therefore, we review both questions of law and questions of fact arising upon the evidence presented in the record to determine if the court abused its discretion.  *See* Section 3-2-204(5), MCA.  *Also see Boz-Lew Builders v. Smith* (1977), 174 Mont. 448, 452, 571 P.2d 389, 391.

DISCUSSION

¶13 Did the District Court abuse its discretion when it permanently enjoined lawful flood irrigation practices on the Youngs' property?

¶14 The District Court determined that the imposition of a permanent injunction was warranted in this case pursuant to § 27-19-102, MCA, and as a matter of equity. Accordingly, we must decide whether the District Court abused its discretion when it permanently enjoined flood irrigation practices on the Youngs' property as both a matter of law and equity. We will first examine whether the District Court complied with the procedures stated in § 27-19-102, MCA, and then, in turn, address whether the District Court abused its discretion in its efforts to achieve an equitable result.

¶15 The Youngs claim that neither law nor equity permits the imposition of a permanent injunction precluding lawful irrigation practices. The Youngs contend that the trial court applied an incorrect legal standard when it permanently enjoined their irrigation practices, which it initially determined were lawful and did not cause the Wells' damages. The Youngs assert that the applicable Montana statute governing the imposition of permanent injunctions, § 27-19-102, MCA, requires a breach of an obligation as a prerequisite to the imposition of a permanent injunction. The Youngs point out that the District Court did not expressly find that they breached a duty or an obligation owed to the Wells. Likewise, the Youngs argue that a breach of the duty imposed by § 28-1-201, MCA, not to damage the property of another, cannot be

7

implied from the court's findings. The Youngs maintain that if such a finding were implied, it would conflict with the court's explicit findings and conclusions that: (1) they did not breach the standard of care of a reasonable farm irrigator engaged in flood irrigation, (2) the Wells' trespass and nuisance actions are barred by § 85-7-2212(2), MCA, and (3) the flooding experienced by the Wells was caused by an underground conduit constructed by the BIA.

¶16 The Wells respond that the District Court did not abuse its discretion, under legal or equitable grounds, when it imposed a permanent injunction. While they do not dispute that a breach of an obligation is a prerequisite to the imposition of a permanent injunction pursuant to § 27-19-102, MCA, they assert that the statute serves only as "mere guidelines" to a district court when issuing permanent injunctions pursuant to its equitable powers. Moreover, the Wells observe that the District Court necessarily complied with the procedures set forth in § 27-19-102, MCA, since it specifically found that the Youngs breached the obligation imposed by § 28-1-201, MCA, when their irrigation practices caused "immediate, irreparable, and substantial harm" to the Wells' home. Further, the Wells assert that if not expressly stated, an implied finding exists that the Youngs breached the duty imposed by § 28-1-201, MCA, as such a finding is consistent with the District Court's express findings.

¶17 While the parties agree that a district court must find a breach of an obligation by the party sought to be enjoined prior to imposing a permanent injunction, pursuant to § 27-19-102, MCA, they disagree over whether the District Court expressly or impliedly

8

found that the Youngs breached the obligation imposed by § 28-1-201, MCA. Accordingly, in determining whether the District Court abused its discretion, we look to the District Court's findings to determine whether it found that the Youngs breached such obligation.

¶18 The District Court specifically found in its July 25, 2000, Order that:

The flood irrigation practice utilized on the Youngs' field is typical of
the practice of irrigators who utilize flood irrigation on crops. [Finding # 13]

The field ditches on the Youngs' field are of the correct size, located at
or near the high point of the field which is necessary to irrigate the field
and situated in a manner to convey water. [Finding # 14]

Expert testimony established that it is unlikely that the flood irrigation
conducted by Mr. Warren and Mr. Young caused a rise in groundwater
so substantial as to cause the flooding experienced by the Wells. The
most plausible and credible explanation of the flooding experienced by
the Wells is the existence of a subsurface pathway or conduit from the
head ditch on the Youngs' property to the home on the Wells' property.
[Finding # 26]

Conduits can result from decaying tree roots, old utility paths, and/or
old abandoned ditches. The evidence indicates that all three possible
sources exist on the Wells' property. [Finding # 27]

The most likely conduit is an abandoned BIA ditch which runs to or in
close proximity to the Wells' home. The BIA ditch was altered due to
highway construction in 1961 with part of the ditch forming the head
ditch now on the Youngs' property and the abandoned portion of the

9

ditch traveling across the Wells' property. [Finding #28] The District Court then expressly concluded in its July 25, 2000, Order that: (1) the Wells' trespass actions are precluded by § 85-7-2212(2), MCA, (2) the Wells' nuisance action is precluded by § 27-30-101(3), MCA, and (3) the Youngs did not breach the standard of care of a reasonable farm irrigator engaged in flood irrigation.

¶19 Further, in its October 4, 2000, Order, the District Court stated:

> [T]his Court's imposition of a permanent injunction comports with the procedure outlined in § 27-19-102, MCA. Defendants have a clear general duty (as do we all) not to damage the property of another. See § 28-1-201, MCA. Under the unique facts of this case, the Defendants continued use of flood irrigation upon their field clearly results in immediate, irreparable, and substantial harm to the Plaintiffs' home.

¶20 Clearly, the District Court entered a general finding in its October 4, 2000, Order determining that the Youngs breached the duty imposed upon them by § 28-1-201, MCA. In the face of this general finding, however, the District Court also entered specific findings and conclusions that the Youngs: (1) did not trespass, pursuant to § 85-7-2212(2), MCA, (2) did not create a nuisance, pursuant to § 27-30-101(3), MCA, and (3) conformed to the applicable standard of care required of them. This leads us to the inescapable conclusion that the District Court's general finding that the Youngs breached the duty imposed by § 28-1-201, MCA, conflicts with its more specific findings and conclusions. We have previously held that when a general finding is inconsistent with a specific finding, the general finding will be rejected. *Brubaker*

10

*v. D'Orazi* (1947), 120 Mont. 22, 30-31, 179 P.2d 538, 542. *Also see* Section 1-3-225, MCA. Hence, we must reject the District Court's general finding that the Youngs breached § 28-1-201, MCA. We conclude, rather, that the District Court abused its discretion when it imposed a permanent injunction pursuant to § 27-19-102, MCA, since the District Court entered specific findings and conclusions that the Youngs' irrigation practices were lawful and were not negligently performed.

¶21 We now turn to the question of whether the District Court abused its discretion, as a matter of equity, when it enjoined flood irrigation practices on the Youngs' property. The Youngs contend that equity follows the law. The Youngs thus argue that, as a matter of equity, a finding of wrongful activity or the breach of an obligation is a prerequisite to the imposition of a permanent injunction since such a finding is required by § 27-19-102, MCA. The Youngs assert that the District Court abused its discretion when it permanently enjoined their lawful irrigation practices.

¶22 The Wells argue that the injunction was entirely appropriate under the circumstances. They assert that the District Court correctly relied upon our holding in *Madison Fork* for the proposition that a court sitting in equity may enjoin conduct causing irreparable harm, which may be protected in some respects, if the equities of the particular case warrant injunctive relief. The Wells claim that the equities in this case, as properly balanced between the parties by the court, warrant injunctive relief. Specifically, the Wells claim that the equities clearly favor them since they will sustain substantial damages to their

11

home if the Youngs' flood irrigation practices, which net the Youngs only nominal revenues, are allowed to continue.

¶23 We have held that equity follows the law. *See First National Bank of Twin Bridges v. Sant* (1973), 161 Mont. 376, 383, 506 P.2d 835, 840. We stated in *Nelson v. Wilson* (1928), 81 Mont. 560, 264 P. 679, 683, that:

    Indeed, law and equity do not clash. In many cases they are
commingled,
    administered together, and the rules of each have a place. Any idea that the
    law judges in defiance of equity and that equity is not bound by the law is
    erroneous. 2 Cooley's Blackstone (4th Ed.) 430. While this case is a suit
    in equity, brought to obtain equitable relief, in it the law must be invoked
    to determine what rules govern transactions . . . so that both law and equity
    must be regarded.

¶24 The cases cited by the Wells, wherein a permanent injunction was imposed, follow the principle that equity follows the law. Prior to the imposition of an injunction in those cases, wrongful conduct or the breach of an obligation were expressly identified. *See Jefferson v. Big Horn County*, 2000 MT 163, ¶ 17 and ¶ 28, 300 Mont. 284, ¶ 17 and ¶ 28, 4 P.3d 26, ¶ 17 and ¶ 28 (injunction enjoining government's unlawful imposition of tax vacated after change in law); *Engel v. Gampp*, 2000 MT 17, ¶ 58, 298 Mont. 116, ¶ 58, 993 P.2d 701, ¶ 58 (encroachment of ditch right in violation of § 70-17-112, MCA, enjoined); *Ducham v. Tuma* (1994), 265 Mont. 436, 442-443, 877 P.2d 1002, 1006-1007 (activity constituting trespass enjoined); and *Butler v. Germann* (1991), 251 Mont. 107, 115, 822 P.2d 1067, 1072 (encroachment of ditch right in violation of § 70-17-112, MCA, enjoined).

¶25 Moreover, our decision in *Madison Fork* is distinguishable. The parties in *Madison Fork* entered into a contract whereby L & B Lodge Pole Timber Products ("L & B") was allowed to cut beetle infested timber on the Madison Fork Ranch ("the Ranch"). Thereafter, L & B cut both beetle infested trees and uninfected trees. The Ranch subsequently notified L & B that they considered the contract terminated as a result of L & B's failure to perform according to the contract terms. The Ranch filed suit and the trial court issued a temporary restraining order precluding further harvesting of timber on the Ranch. After a hearing, the court vacated the temporary restraining order. Shortly thereafter, L & B logged an additional 15 to 25 acres, including infested and uninfected timber. *Madison Fork*, 189 Mont. at 297, 615 P.2d at 903.

¶26 Following a trial, the trial court found that L & B "failed and refused to perform certain obligations under the contract" and concluded that L & B breached the contract. *Madison Fork*, 189 Mont. at 298, 615 P.2d at 904. The trial court held that an injunction was proper because the destruction and threatened future destruction of the standing timber could not be remedied by an action at law. *Madison Fork*, 189 Mont. at 298, 615 P.2d at 904. On appeal, we held that the trial court did not abuse its discretion when it imposed a permanent injunction enjoining L & B from harvesting both infested and uninfected timber since L & B breached the terms of the contract. *Madison Fork*, 189 Mont. at 302, 615 P.2d at 906. Further, we held that the injunction was warranted because L & B entered the Ranch and continued to cut both

13

infested and uninfected timber after receiving notification of termination of the contract. *Madison Fork*, 189 Mont. at 302, 615 P.2d at 906.

¶27  Unlike *Madison Fork*, the District Court in this case entered no specific findings that the Youngs' conduct was unlawful or that they breached an obligation.   Rather, the District Court specifically determined that the Youngs' conduct was lawful and that the "most plausible and credible explanation" of the flooding experienced by the Wells resulted from an abandoned BIA ditch. Therefore, based on the particular facts of this case, we conclude that the District Court abused its discretion, as a matter of equity, when it permanently enjoined flood irrigation practices on the Youngs' property.  Accordingly, we reverse the District Court's imposition of a permanent injunction in this case.

¶28  In passing, we note that the District Court concluded that  § 85-7-2212(2), MCA, does not prohibit injunctive relief. Although we agree that there may be circumstances where injunctive relief may be allowed, they do not exist here.  For example, if an injured party acquired property before the water seepage existed or began, or the seepage contained toxic chemicals, injunctive relief may be appropriate.  *See* Section 85-7-2212(2), MCA.  In the matter before us, however, the District Court found that the Youngs and their predecessors irrigated the property many years before the Wells purchased their adjacent homesite.  There is likewise no evidence in the record to suggest that the seepage here contained toxic chemicals.  Under the facts presented here, and as determined by

the District Court, we conclude that the court abused its discretion in issuing the injunction.

¶29 Reversed.

/S/ JIM REGNIER

We Concur:

/S/ KARLA M. GRAY
/S/ JAMES C. NELSON

/S/JULIE MACEK
District Court Judge Julie Macek
sitting in for Justice Cotter

Justice W. William Leaphart dissenting.

¶30 I dissent. Based upon general equity principles, the deference afforded to district courts with respect to equitable relief and our established precedent, I would hold that the District Court properly enjoined the Youngs from further damaging the Wells' home in order to earn approximately $400 per year.

¶31 Equity principles permit the District Court's decision under the facts of this case. The majority relies on the proposition that equity follows the law and, citing our 1928 *Nelson* decision, the notion that law and equity do not clash and are, in many cases, commingled. I agree with these basic equity tenants. However, I disagree with the majority's narrow view of, what I believe, are courts' broader equity powers to serve justice when a party lacks a remedy at law.

¶32 Our early case law recognized a distinction between legal and equitable remedies. In *State ex rel. Lewis and Clark County v. District Court* (1931), 90 Mont. 213, 219-20, 300 P. 544, 546, we noted that while there are a great many exacting Code provisions which must be strictly followed as applied to actions at law, there are others with which the law provisions have nothing to do, except as equity follows the law, "and the two must not be confused." Indeed, in the *Nelson* opinion cited by the majority, we also recognized that equity, while guided by rules and precedent, is "the correction of that wherein the law, by reason of its universality, is deficient." *Nelson*, 81 Mont. at 572, 264 P. at 683.

16

¶33 It is equally important to note that injunctive relief, as a device of equity, is appropriate when it appears that the commission or continuance of an act will produce irreparable injury to the party seeking relief. A continuing invasion of a property right may constitute an irreparable injury. *Engel*, ¶ 56 (citing *Ducham,* 265 Mont. at 442-43, 877 P.2d at 1006). What distinguishes an injunction from other forms of relief is that it is an equitable remedy granting prospective, as opposed to retrospective, relief. *Jefferson,* ¶ 18. Most importantly, equity dictates that an injunction be fashioned according to the circumstances of the case. *Talley,* 259 Mont. at 491, 857 P.2d at 708 (citing *Montana Tavern Ass'n v. State of Montana by and through Dept. of Revenue* (1986), 224 Mont. 258, 265, 729 P.2d 1310, 1315).

¶34 Here, the District Court invoked the law to determine what rules governed the transactions between the Youngs and the Wells. It properly determined that, under § 85-7-2212(2), MCA, the Wells could not maintain an action at law against the Youngs since the Youngs' irrigation practices predated the Wells' interest in their land. However, as the District Court concluded and the majority acknowledges, § 85-7-2212(2), MCA, does not preclude the possibility of injunctive relief to prevent future irreparable injury to property.

¶35 The majority would restrict injunctive relief to only situations outlined in § 85-7-2212(2), MCA. That statute, however, does not address injunctive relief. Rather, it permits an action at law if an injured party acquired property before the water seepage existed or began or if the seepage contained toxic

17

chemicals.  If a remedy at law exists, equitable relief is improper.  *Curran v. Dept. of Highways* (1993), 258 Mont. 105, 109, 852 P.2d 544, 546 (if party's "loss can be compensated, of course, it is not an irreparable injury.").  As such, contrary to the majority's conclusion, an equitable remedy would not likely exist in these particular situations.

¶36  The majority also concludes that the District Court entered no specific findings that the Youngs' conduct was unlawful or that they breached an obligation and, thus, the court's reliance on *Madison Fork* was misplaced.  However, what the majority fails to address is that the district court in *Madison Fork* enjoined <u>lawful</u> conduct when it restrained L & B from harvesting infected timber on the Madison Fork Ranch.  With regard to these trees, there was no breach of contract or breach of obligation.  Yet, we upheld the district court's injunction under the facts of that case on the basis of two general principles:  that injunctions must be framed according to the circumstances of each case and that injunctions are proper if an act has or will produce irreparable injury.  *Madison Fork*, 189 Mont. at 302, 615 P.2d at 906.

¶37  In this regard, we have previously  upheld injunctive relief restraining lawful activity.  *Boyer v. Karagacin* (1978), 178 Mont. 26, 32-33, 582 P.2d 1173, 1177 (upheld permanent injunction prohibiting legal parking of car which blocked access to adjacent business upon concluding that " . . . an act, while technically legal, may be enjoined as a nuisance.").  In disputes among neighbors, such as the one at hand, we have approved of equitable measures restricting lawful conduct "for the sake of preserving

18

'peace and tranquility.'" *Engel,* ¶¶ 52-53 (lawful user of easement required to give notice to neighbor by mail or telephone prior to exercising her right to access easement by vehicle).

¶38 Here, while the District Court found that an abandoned BIA ditch was most likely responsible for flooding the Wells' home, it also found that the Wells experienced flooding only when the Youngs irrigated their property. Thus, logically, the Court found that continued irrigation would cause further flooding and increased damage to the structural integrity of the Wells' home and constitute a substantial risk of continuing harm and irreparable injury to the Wells' property. In contrast, the court found that the Youngs irrigated only sporadically and that income the Youngs derived from crop production was minimal and, in part, unknown. Thus, the District Court reasoned that the potential damage to the Wells' home and property was far greater than the nominal income the Youngs derived from crop production. Substantial evidence in the record supports this determination.

¶39 To hold that the District Court abused its discretion in issuing injunctive relief under these facts is tantamount to saying that an irrigator may, for no good reason, continue causing irreparable damage to his neighbor's home, in perpetuity. It would be a different situation altogether if the Youngs' irrigation resulted in more than nominal income. By carefully considering the competing interests involved and fashioning injunctive relief, the District Court did not act on a whim or decide this case in defiance of the law. Giving due deference to the District Court, I would affirm.

/S/ W. WILLIAM LEAPHART

Justice Terry N. Trieweiler and Justice Jim Rice join in the dissent of Justice Leaphart.

/S/ TERRY N. TRIEWEILER
/S/ JIM REGNIER