No. 03-558

IN THE SUPREME COURT OF THE STATE OF MONTANA

2004 MT 237

PATSY L. RICE,

        Plaintiff  and Respondent,

    v.

C. I. LANNING,
a Montana Corporation,

        Defendant,

    and

KATHLEEN JOHNSTON and ROSS JOHNSTON,

        Defendants and Appellants.

APPEAL FROM:    District Court of the First Judicial District,
                   In and For the County of Lewis and Clark, Cause No.  BDV-99-434
                   Honorable Jeffrey Sherlock, Presiding Judge

COUNSEL OF RECORD:

        For Appellants:

        Robert T. Cummins, Attorney at Law, Helena, Montana

        For Respondent:

        Bruce M. Spencer, R.J. "Jim" Sewell, Jr., Craig D Charlton;
        Smith Law Firm, Helena, Montana

Submitted on Briefs:  June 15, 2004

Decided:   August 31, 2004

Filed:

_____
                  Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1    Patsy L. Rice filed an eight-count complaint against C. I. Lanning, Kathleen Johnston and Ross Johnston in the First Judicial District Court, Lewis and Clark County. A jury ultimately found Lanning was negligent and breached the contract under which he sold real property to Rice. The jury also determined Ross Johnston is forbidden to conduct commercial activities on the lot adjacent to Rice's property which is owned by his mother, Kathleen Johnston. The District Court subsequently entered permanent injunctions prohibiting Ross Johnston and Kathleen Johnston from conducting or permitting any commercial activity on the Johnston lot. The Johnstons appeal. We affirm.

¶2    We address the following issues:

¶3    1. Did the District Court abuse its discretion when it gave Instruction Number 11 on the effect of unrecorded instruments?

¶4    2. Did the District Court abuse its discretion when it admitted unrecorded covenants as Exhibit 4?

¶5    3. Did the District Court err when it allowed Rice to recover money damages from Lanning and also entered a permanent injunction against Ross Johnston?

¶6    4. Did the District Court err in granting an injunction against Kathleen Johnston after the verdict and judgment had been filed?

BACKGROUND

2

¶7      In July and November of 1997, Rice purchased Lots 3 and 4 in Lanning's subdivision in the Helena, Montana, valley.   Rice built her home on Lot 4.  Before Rice purchased her lots, Lanning represented to her that the subdivision would be subject to restrictive covenants including a covenant prohibiting commercial activity.  Lanning or his agent gave Rice's agent a copy of covenants including that restriction.

¶8      Kathleen Johnston purchased Lot 2 in Lanning's subdivision in January of 1998, next door to Rice's lots.  Ross Johnston--Kathleen's adult son--and his family moved into the existing home on Lot 2 and, by January of 1999, had built a large garage out of which he operated an auto body repair shop.  Rice's living room window looks out over the auto body shop.

¶9      Rice made various extrajudicial attempts, such as efforts to enforce wastewater disposal regulations, to force Ross Johnston to stop operating the auto body shop.  During that time, she learned that Lanning had filed restrictive covenants with the Lewis and Clark County Clerk and Recorder in July of 1997, but those covenants did not match the ones he had given her and did not include a provision prohibiting commercial activity in the subdivision.

¶10     When her extrajudicial efforts to close the auto body shop failed, Rice filed this action in July of 1999.  Lanning filed a cross-claim alleging that, despite express prohibition of commercial development in the subdivision and his demands that Ross Johnston cease operating his auto body repair business on Lot 2, Ross Johnston and Kathleen Johnston

3

refused to stop their commercial activity on the property. Lanning dropped his cross-claim prior to trial.

¶11 All of the parties except Kathleen Johnston testified during the three-day jury trial. Rice presented additional testimony from several witnesses. The Johnstons presented testimony from Ross and two other witnesses.

¶12 At the end of trial, the jury was given a special verdict form on which the first questions were whether Lanning had committed constructive fraud or negligent misrepresentation to Rice. The jury answered "No" to both questions. The jury next was asked if Lanning had breached a contract with Rice and if he had committed negligence, to both of which the jury answered "Yes." The jury found Rice suffered $45,000 in damages as a result of Lanning's actions and attributed negligence 15 percent to Rice and 85 percent to Lanning. Finally, the jury answered "Yes" when asked whether Ross Johnston is forbidden to conduct commercial activities on Lot 2.

¶13 The District Court entered a permanent injunction prohibiting Kathleen Johnston and Ross Johnston from permitting or conducting commercial activities on Lot 2, then amended the injunction to make it effective only against Ross, matching the jury verdict. Two months later, Rice moved the court to hold the Johnstons in contempt based on her observations that the auto body repair shop was still operating. After a hearing, Rice moved for, and the court entered, a permanent injunction prohibiting both of the Johnstons from conducting or permitting any commercial activity on Lot 2. The Johnstons appeal.

ISSUE 1

¶14 Did the District Court abuse its discretion when it gave Instruction Number 11 on the effect of unrecorded instruments?

¶15 The District Court gave Jury Instruction Number 11, which stated "An unrecorded instrument is valid as between the parties and those who have notice thereof." This instruction directly quotes § 70-21-102, MCA. We review a challenged jury instruction to determine whether the district court abused its discretion in giving the instruction. *Allison v. Town of Clyde Park*, 2000 MT 267, ¶ 11, 302 Mont. 55, ¶ 11, 11 P.3d 544, ¶ 11.

¶16 Ross Johnston contends the unrecorded covenants did not qualify as an "instrument" under § 70-21-102, MCA, because they did not contain the names and addresses of the parties thereto or a description of the real property affected. He contends both are required under § 70-21-101, MCA.

¶17 Section 70-21-101, MCA, sets forth requirements for abstracted documents which are included within the term "instrument" for "purposes of Title 1, chapter 5; part 2 of this chapter; and 70-21-310[.]" This case does not involve the statutes referenced in § 70-21-101, MCA; nor are abstracted documents at issue here. Therefore, the requirements of § 70-21-101, MCA, are of no assistance to Ross Johnston.

¶18 Ross Johnston also argues § 70-21-102, MCA, applies only to parties, purchasers or persons who take or hold under them, and that "it does not apply to the general public who at some time might learn of the unrecorded instrument." He apparently places himself in the "general public" category in relation to Lot 2. In support of this argument, he relies on the

5

following cases decided under § 70-21-102, MCA: *Hull v. Diehl* (1898), 21 Mont. 71, 52 P. 782; *Mullins v. Butte Hardware Co.* (1901), 25 Mont. 525, 65 P. 1004; *Sheldon v. Powell* (1904), 31 Mont. 249, 78 P. 491; *Custer Consol. Mines Co. v. City of Helena* (1916), 52 Mont. 35, 156 P. 1090; *Zier v. Osten* (1959), 135 Mont. 484, 342 P.2d 1976; *Aye v. Fix* (1981), 192 Mont. 141, 626 P.2d 1259; and *Harbeck v. Orr* (1981), 192 Mont. 243, 627 P.2d 1217.

¶19     The cases upon which Ross Johnston relies stand generally for the proposition that a subsequent purchaser must have had knowledge of an unrecorded instrument in order to be bound by it. Without reciting the facts and holdings of each case, we note that none of them supports the notion that notice of an unrecorded interest in land may be enforced only against a purchaser. Pursuant to the plain language of § 70-21-102, MCA, unrecorded instruments are valid between "those who have notice thereof."

¶20     Darcy Hazen, who worked for Lanning, testified that she showed Ross Johnston Lot 2 before his mother purchased it. Hazen also testified she gave Ross Johnston the same restrictive covenants Rice had seen and told him the covenants prohibited commercial activity on the property. In addition, Ross Johnston admitted in 1999 that he had knowledge of the existence and, in his view, applicability of the unrecorded restrictive covenants in a letter to the Montana Department of Commerce, in which he wrote, "the covenance [sic] on this property will not allow for a commercial business, and this building will not be used for commercial use in the future." Ample evidence was presented on which the jury could find that Ross Johnston had notice of the covenants.

6

¶21 We hold that the District Court did not abuse its discretion when it gave Instruction Number 11 on the effect of an unrecorded instrument.

ISSUE 2

¶22 Did the District Court abuse its discretion when it admitted unrecorded covenants as Exhibit 4?

¶23 A district court has broad discretion in determining whether evidence is relevant and admissible, and we will not overturn the trial court's determination absent an abuse of discretion. *Glacier Tennis Club at Summit, LLC v. Treweek Const. Co., Inc.,* 2004 MT 70, ¶ 47, 320 Mont. 351, ¶ 47, 87 P.3d 431, ¶ 47 (citation omitted).

¶24 Exhibit 4 is a copy of the unrecorded restrictive covenants Lanning gave to Rice, which include the prohibition on commercial activity. The covenants state they apply to "T-L RANCH TRACTS 3-B SUBDIVISION Situated in Section 10 & 14, T-10 N, R-3 W, MPM, Lewis & Clark County, Montana." Ross Johnston states Lot 2 is located in Section 11, Township 10 North, Range 3 West and, therefore, he argues Exhibit 4 does not apply to Lot 2. While technically correct, this argument does not render the exhibit inadmissible.

¶25 Generally, all relevant evidence is admissible. Rule 402, M.R.Evid. Rice testified that Exhibit 4 was the document which Lanning or his agent gave to her agent and represented as covenants which applied to the subdivision. Also, Darcy Hazen testified that she gave Ross Johnston a copy of Exhibit 4 and Ross Johnston admitted in his 1999 letter to the Montana Department of Commerce that, to his knowledge, covenants precluded

7

commercial activity on the property. On those bases, we conclude Exhibit 4 was relevant and admissible.

¶26   We hold that the District Court did not abuse its discretion when it admitted the unrecorded covenants as Exhibit 4.

ISSUE 3

¶27   Did the District Court err when it allowed Rice to recover money damages from Lanning and also entered a permanent injunction against Ross Johnston?

¶28   Ross Johnston states that the jury granted Rice money damages for the existence of a commercial business on Lot 2, and that the District Court's grant of an injunction as well results in double recovery. He also cites § 27-19-102, MCA, which sets forth situations in which a final injunction may be granted, and contends none of the statutory situations exists here. Finally, he asserts "[t]here is an old legal axiom that states if a party's loss can be compensated, then it is not an irreparable injury and an equitable remedy of injunction does not exist."

¶29   Montana law does not prohibit awarding money damages and an injunction in the same case. *See, e.g., Butler v. Germann* (1991), 251 Mont. 107, 822 P.2d 1067, *overruled on other grounds*, *Shammel v. Canyon Resources Corp.*, 2003 MT 372, 319 Mont. 132, 82 P.3d 912. In this case, the money damages Rice was awarded were from Lanning, for diminution in value of her property due to his failure to record the covenant prohibiting commercial use.

8

¶30     On the other hand, the injunction against Ross Johnston and, subsequently, Kathleen Johnston, is based on Ross Johnston's continuing operation of a commercial enterprise in spite of having been given notice that a restrictive covenant prohibited commercial activity in the subdivision. Section 27-19-102(3), MCA, allows an injunction when necessary to prevent a multiplicity of judicial proceedings. A continuing invasion of property rights--like Ross Johnston's continuing violation of Rice's property rights by operating his auto body repair shop on the lot next to hers--justifies injunctive relief so an injured party is not forced to bring a multiplicity of actions at law to be compensated for ongoing injury. *See Ducham v. Tuma* (1994), 265 Mont. 436, 442-43, 877 P.2d 1002, 1006, *overruled on other grounds*, *Shammel*.

¶31     We hold the District Court did not err in allowing Rice to recover money damages from Lanning and also entering a permanent injunction against Ross Johnston.

ISSUE 4

¶32     Did the District Court err in granting an injunction against Kathleen Johnston after the verdict and judgment had been filed?

¶33     Our standard of review of a district court's grant of an injunction is whether the court manifestly abused its discretion. A manifest abuse of discretion is one that is obvious, evident or unmistakable. *Shammel*, ¶ 12.

¶34     The Johnstons point out there was no jury finding against Kathleen Johnston. They also point out that Rice made no Rule 59, M.R.Civ.P., motion for a new trial or Rule 60, M.R.Civ.P., motion to amend the judgment.

9

¶35 Under the circumstances here presented, neither a jury finding against Kathleen Johnston nor a post-trial Rule 59 or Rule 60 motion was necessary in order for the District Court to enjoin her from conducting or allowing a commercial operation on her property. A final or permanent injunction is a continuing process over which a court necessarily retains jurisdiction in order to do equity. *Jefferson v. Big Horn County*, 2000 MT 163, ¶ 27, 300 Mont. 284, ¶ 27, 4 P.3d 26, ¶ 27. Pursuant to § 27-19-105(4), MCA, a non-party to an injunction may be enjoined if she is acting in active concert or participation with someone who is enjoined, provided she received actual notice of the injunction by personal service or otherwise. *Morton v. Lanier*, 2002 MT 214, ¶ 29, 311 Mont. 301, ¶ 29, 55 P.3d 380, ¶ 29.

¶36 Kathleen Johnston received actual notice of the first injunction against her son Ross through service on the attorney who represented them both as party defendants in this action. Nevertheless, she admitted at the hearing on Rice's motion for contempt that, after that judgment was entered, she formed a corporation through which Ross would continue to run an auto body repair shop on Lot 2, property to which she held title. She testified that her corporation--she was the sole shareholder--had only one employee, Ross. She testified that she did not supervise Ross because she did not know how to operate an auto body repair business.

¶37 The record supports a conclusion that Kathleen Johnston formed a sham corporation in an attempt to get around the court's injunction, of which she had notice, prohibiting her son from engaging in commercial activity on Lot 2, which she owned. We hold the District

10

Court did not manifestly abuse its discretion in granting an injunction against Kathleen Johnston after the verdict and judgment had been filed.

¶38    Affirmed.


                                        /S/ KARLA M. GRAY


We concur:

/S/ PATRICIA O. COTTER
/S/ JIM REGNIER
/S/ JOHN WARNER
/S/ JIM RICE

Justice Patricia O. Cotter concurs.

¶39    I concur in the Court's Opinion. I write separately to comment on the covenants at issue. As indicated in the Court's Opinion, the unrecorded covenants included a prohibition on commercial activity. However, the covenants that were later recorded did not contain this prohibition. ¶ 9. At first blush, it might be arguable that the contents of the recorded covenants should supercede the unrecorded covenants on this point. However, this argument was not squarely presented by the appellants; in fact, they admitted knowing that the unrecorded covenants precluded commercial activity on the property. ¶ 25. Moreover, it was undisputed that the certificate of subdivision applicable to Johnston's lot provided that only single-family dwellings would be permitted. Thus, the fact that the subsequently recorded covenants did not preclude commercial activity is of no consequence under the facts presented here. I therefore concur.

/S/ PATRICIA O. COTTER